### F. F. CHERRY v. L. J. UPTON & COMPANY.

(Filed 6 September, 1920.)

1. **Evidence—Declarations—Hearsay—Res Inter Alios Acta—Vendor and Purchaser—Contracts—Breach.**

   In seller's action to recover damages for the purchaser's breach of contract to accept potatoes, wherein the defendant relies upon the ground that the potatoes did not come up to grade and were therefore refused by him, accounts made to the seller by another and subsequent purchaser of the potatoes refused by the defendant, showing they were of the required grade, are incompetent upon the question as hearsay and *res inter alias acta*.

2. **Instructions—Contract—Breach—Vendor and Purchaser—Damages.**

   Where the purchaser of goods, in this case potatoes, has breached his contract to receive and pay for them, so that the seller is forced to sell them upon the market, it is required of the trial judge, in charging the jury upon the question of the measure of damages, to give them some guidance to aid them in their determination, and an instruction to allow such sum as they find the damage to be, subject to the vendor's duty to minimize the loss, is erroneous.

3. **Vendor and Purchaser—Contracts—Breach—Measure of Damages—Nominal Damages.**

   Where the purchaser of goods of a market value, wrongfully refuses to accept them according to his contract, under claim that they were not up to grade, and the vendor could have reasonably sold them at the place and time of delivery for the contract price, or more, the vendor can only recover nominal damages in his action, the measure of damages being the difference between the contract price and the market value at the time and place of delivery.

APPEAL by defendant from *Cranmer, J.*, at the April Term, 1920, of BEAUFORT.

This is an action to recover damages for refusal to accept and pay the contract price for 746 barrels of potatoes.

The plaintiff contracted to sell and deliver at Aurora, and defendant to buy and pay for, at the rate of $3 per barrel, all of the No. 1 and No. 2 potatoes grown on three of plaintiff's farms in the June season of 1916.

Plaintiff alleged and testified in substance that the potatoes were dug, delivered, and paid for according to contract, with the exception of 746 barrels refused by defendant, and which, according to plaintiff, were up to grade, that is, Nos. 1 and 2.

The defendant justified its refusal to take the 746 barrels on the ground that they were not Nos. 1 and 2, being sunburnt to such an extent as to endanger and depreciate the entire lot.

The plaintiff offered evidence tending to prove that the potatoes were up to grade, and that the defendant refused to accept them, and that he shipped them to New York, where they were sold for him at a loss of $944.18.

The defendant offered evidence that the potatoes were sunburned, and not in accordance with the contract, and that he refused to receive them for that reason.

The defendant also offered evidence tending to show that there was a market for potatoes at Aurora, the place where they were to be delivered, and that at the time of the refusal of the defendant to receive the potatoes that No. 1 and No. 2 potatoes were worth there $3 or $3.75 per barrel.

The plaintiff introduced over the objection of the defendant the accounts of the sales from the merchants in New York on which was given the number of barrels, the grade of the potatoes as No. 1 and No. 2, and the prices for which they were sold.

Defendant requested the court to charge the jury:

1. "The court instructs that the invoices or accounts of sale offered by plaintiff in evidence are not to be considered by the jury as any evidence of the grade or condition of the potatoes when offered for delivery to defendant, if you find they were so offered."

The court declined this request, and defendant excepted.

(2) "Upon the second issue I charge you that the damage, if any, which plaintiff may be entitled to recover of the defendant depends upon the price of No. 1 and No. 2 potatoes at Aurora at the time of refusal by defendant to take the potatoes in question. The measure of damages, therefore, is the difference between the contract price of $3 per barrel and the market price of No. 1 and No. 2 potatoes in Aurora, where the same were to be delivered, at the time of refusal by defendant. In this connection plaintiff testified that he did not know the market price at Aurora was $3 or more per barrel at that time. If the jury answer the first issue 'Yes,' and further find that the market price of No. 1 and

No. 2 potatoes at Aurora at the time of refusal by defendant was $3 or more per barrel, the jury are instructed to answer the second issue 'One penny,' or some other nominal amount." Refused, and defendant excepted.

In lieu of this instruction, the court charged the jury: "I instruct you that it is the duty of a party to a contract, upon breach of the contract by the other party, to exercise the care of a prudent man to mitigate the loss. If you answer the first issue 'Yes,' you will consider whether the plaintiff observed this rule and acted as an ordinarily prudent man would have acted under said circumstances, whether he observed the rule as to mitigation of damages, if you find that he was damaged. If you so find, then you will allow such sum, not to exceed $944.18, as you find the damage to be, and if you find that a less number of barrels were refused, and that he still observed the rule, then you will allow such sum as you find the damage to be. You may allow him interest on the amount you find due him from the time you find the tender to have been made."

To this instruction the defendant excepted.

The jury returned the following verdict:

"1. Did the defendant wrongfully refuse to accept and pay the plaintiff for any part of the potatoes embraced within the contract of 6 June, 1916, sued upon in the action, as alleged in the complaint? Answer: 'Yes.'

"2. If so, in what amount, if any, was the plaintiff damaged thereby? Answer: '$944.18, with interest.'"

There was a judgment in favor of the plaintiff, and the defendant appealed.

*John G. Tooly and Harry McMullan for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. The statements of accounts sent by the New York merchants to the plaintiff were inconsistent, because they were mere unsworn declarations, and as to the defendant *res inter alias acta.*

If, instead of sending accounts, they had written a letter acknowledging the receipt of the potatoes, and saying they were No. 1's and No. 2's, and had been sold for a certain amount of money, it would not be contended that the letter would be admitted in evidence, and the accounts of sales contain in effect the same declaration, and are subject to the same objection.

The case of *Dyeing Co. v. Hosiery Co.,* 126 N. C., 293, is in point. In that case the plaintiff brought an action to recover a balance alleged to be due for dyeing hosiery goods belonging to the defendant, and the defendant refused to pay upon the ground that the work was defective and the goods damaged.

The defendant, after receiving the goods from the plaintiff, shipped them to another company to be sold, and statements of sales were returned to the defendant.

On the trial the defendant offered these accounts of sales for the purpose of proving the loss on the goods, but they were excluded, because, as the Court says, "They were simply the declarations of the defendant's agent. Their admission would violate the rule *res inter alias acta,* which excludes such evidence."

This authority was affirmed in *Peele v. Powell,* 156 N. C., 560, which, while reversed on a rehearing, has not been disturbed on this point.

*Bitting v. Thaxton,* 72 N. C., 542, is even a stronger authority against the plaintiff. In that case the plaintiff brought an action against the defendant as his agent, among other things, for the conversion of property belonging to the plaintiff, and in order to prove that the defendant had converted thirty-seven boxes of the plaintiff's tobacco to his own use by selling them to one Reid, offered a copy of Reid's book in evidence in which Reid had credited the defendant with the tobacco as his own and not as agent for the plaintiff.

The evidence was rejected upon the ground that "Reid's book was only Reid's declaration, and that was not competent evidence. And certainly the copy was not better than the original."

This is stronger authority against the plaintiff, because in the *Bitting* case the defendant had been dealing with the party whose book was offered in evidence, while in this case this defendant has had no connection or business relation with the merchants whose statements were offered in evidence.

If another rule should be adopted, and evidence of this character should be admitted, the doors would be opened wide for collusion and fraud, and parties could be confronted at the trial with damaging evidence of which they would have no notice, without the safeguard of an oath or the opportunity for cross-examination.

It follows, therefore, that there was error in receiving the evidence, and in refusing to give the first instruction prayed for.

The defendant was also entitled to have the jury instructed on the issue of damages as requested. "Some measure of damages should have been given to the jury for their guidance," and it was not sufficient to instruct the jury "to allow such sum as you find the damage to be," subject to the duty imposed on the plaintiff to mitigate the loss. *Coles v. Lumber Co.,* 150 N. C., 190.

"The measure of damages in an action by the seller for nonacceptance is the loss directly and naturally resulting in the ordinary course of events from the buyers' breach of contract. Where there is an available market for the goods in question, the measure of damages is prima facie,

or in the absence of special circumstances showing greater damage, to be ascertained by the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or if no time was fixed for acceptance, then at the time of the refusal to accept." 5 Elliott Contracts, 5095.

The same rule applies to breaches by the seller. "It is undoubtedly the general rule that on a failure by the bargainer to deliver goods having market value, the measure of damages is the difference between the contract price and the market value at the time and place where it should have been delivered." *Hosiery Co. v. Cotton Mills*, 140 N. C., 452.

The defendant had the right to refuse to receive the potatoes, and the plaintiff could recover nothing, unless the potatoes graded No. 1 and No. 2 as required by the contract, and if they were of that quality and the refusal of the defendant to receive them was wrongful, the plaintiff's damages would be nominal if the plaintiff could have sold the potatoes at Aurora, the place of delivery, for as much as the contract price, or for a greater sum, and the defendant was entitled to have the jury so instructed, and it was error to refuse to do so as requested.

New trial.