Civil action to recover damages for an alleged breach of covenant in a rental contract.
On 1 July, 1919, plaintiff leased from the defendant, for a period of one year, a certain store room, known as the Swannanoa-Berkley Barber Shop, located on Biltmore Avenue in the city of Asheville, N.C. The rent was to be paid in monthly installments of $40 each. Plaintiff alleges that, in addition to the premises and fixtures, defendant agreed to furnish "hot and cold water" sufficient for the successful carrying on of his business. This latter covenant is denied by the defendant; and, upon issues joined and counterclaim set up by defendant, the jury returned the following verdict:
"1. Did the plaintiff and defendant enter into the contract, as alleged in the complaint? Answer: `Yes.'
"2. Did the defendant breach said contract? Answer: `Yes.'
"3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: `$150.'
"4. Did the plaintiff breach said contract, as alleged in the answer? Answer: `No.'
"5. What amount, if any, is the defendant entitled to recover of the plaintiff? Answer: `Nothing.'" *Page 601 
Judgment on the verdict in favor of plaintiff, from which the defendant appealed.
The plaintiff leased from the defendant for a period of one year a certain store room in the city of Asheville, N.C. to be used as a barber shop. In the written lease the demised premises are described as the "Swannanoa-Berkley Barber Shop, including the fixtures, hot and cold water." Plaintiff contends that this description constituted a covenant on the part of the defendant to furnish him hot water suitable for his business. Defendant denies this contention, and, moreover, insists that at the time the lease was executed he called the plaintiff to his office and, in the presence of defendant's son, explained that he could only agree to furnish plaintiff such hot water as came from the hotel boiler, and that he would not execute the lease except upon that understanding; but further says that there was a jack or urn in the basement of the barber shop which plaintiff could use to increase the temperature of the water if necessary, and that plaintiff agreed to accept the lease upon these terms.
The present action is for damages for breach of what is claimed to be a covenant to furnish hot water. Defendant counter-claimed (561) for loss of rent, the lease being for a year and plaintiff having vacated the premises after the lapse of two months. The jury answered all the issues in favor of the plaintiff, and from the judgment rendered thereon the defendant has appealed.
The assignments of error, upon which the defendant chiefly relies, are those relating to the admission of evidence tending to show loss of prospective profits and the measure of damages. Defendant contends that his Honor permitted the jury to consider supposed future losses and to award speculative damages in violation of the rule stated in Sprout v. Ward,181 N.C. 372; Coles v. Lumber Co., 150 N.C. 183; Machine Co. v. TobaccoCo., 141 N.C. 289, and other cases to like import. Upon this phase of the case the court charged the jury as follows: "Now, gentlemen of the jury, you can take into consideration the condition of his business at the time he quit, the value of it, and the contract, and if the evidence has satisfied you by its greater weight that the failure of the defendant to furnish hot water brought about the breach of the contract, then you would have to consider the reasonable compensation to the plaintiff for the breach of the contract, the destruction of his business, and you will write as your answer to that issue what is a reasonable compensation." *Page 602 
It will be observed that the issues do not establish "the destruction of his business," as a result of defendant's breach of the contract, for which the plaintiff has been permitted to recover under his Honor's charge. It is true a verdict may be given significance and correctly interpreted by reference to the pleadings, the evidence, admissions of the parties and the charge of the court (Kannan v. Assad, 182 N.C. 77); but there is no sufficient finding here that the plaintiff was prevented from having the contemplated use and enjoyment of the premises by reason of the defendant's failure to furnish hot and cold water. Filkin v. Steele, 124 Iowa 742; Bassv. Rollins, 63 Minn. 226. In answer to the second issue (note wording of issue), the jury has said that the defendant breached his contract; but this, we apprehend, and no more, in the absence of such a right reserved in the lease, would not justify the plaintiff in abandoning the premises and suing for damages, without first putting the lessor in default by affording him a reasonable opportunity, after notice, to comply with the terms of his agreement. Green v. Redding, 92 Cal. 548. The case is unlike McMahan v.Miller, 82 N.C. 318, where the tenant was driven from the demised premises by the landlord, or by his refusal to comply with his contract under such circumstances as made it impossible or impracticable for the tenant to remain.
In Lewis v. Chisholm, 68 Ga. 40, it was held that where a (562) landlord covenants to keep the demised premises in repair and fails to do so to the extent merely of diminishing the value of the use of the premises, and not to rendering them untenable, would not work a forfeiture of the rent, as upon a constructive eviction; for, in the language of the syllabus of the reported case: "The remedy of the tenant is, after reasonable opportunity to the landlord, and failure by him to repair, to make the repairs himself and look to the landlord for reimbursement, or to occupy the premises without repair, and hold the landlord responsible for damages by action or by recoupment to an action for the rent."
True, it has been held in a number of cases that on the breach of the landlord's covenant to furnish necessary accessories, supplies, and equipment, as stipulated in the lease, the tenant may abandon the premises and sue for damages, if by reason of such breach and continued neglect they become unfit for his purposes; and this without further liability for rent on his part. Bissell v. Lloyd, 100 Ill. 214; Sheary v. Adams, 25 N.Y. 181;Pres v. Otterstatter, 85 Pa. 534; 3 Southerland on Damages (3 ed.), p. 2611. But we shall not now undertake to formulate any general statement as to what degree of dereliction or default on the part of the landlord, in the absence of any pertinent and controlling stipulation in the lease, will absolve the tenant from his *Page 603 
obligation to pay the rent, subsequently accruing under his contract, and thus warrant him in forsaking the premises and suing for damages; for this, we perceive, is a question which must be determined by the facts and circumstances of each particular case. Ordinarily, however, it may be said that a contract is considered to remain in force until it is rescinded by mutual consent, or until the opposite party does some act, inconsistent with the duty imposed upon him by the contract, which amounts to an abandonment of it on his part. Dula v. Cowles, 52 N.C. 293; Hutchins v.Hodges, 98 N.C. 405.
In Westerman v. Fiber Co., 162 N.C. 297, Hoke, J., observed, "It is not every breach of contract that will operate as a discharge and justify an entire refusal to perform further," and, speaking generally to the subject, quoted with approval the following from Anson's Law of Contract, p. 356: "But though every breach of the contractual obligation confers a right of action upon the injured party, it is not every breach that relieves him from doing what he has undertaken to do. The contract may be broken wholly or in part, and if in part, the breach may not be sufficiently important to operate as a discharge, or, if it be so, the injured party may choose not to regard it as a breach, but may continue to carry out the contract, reserving to himself the right to bring action for such damages as he may have sustained." See, also, Willis v. Branch, 94 N.C. 142.
In the instant case plaintiff was permitted to answer, over objection, a number of questions in regard to what he thought he (563) could have made from his barber shop, during the continuance of the term, and what probable losses he sustained in his business by reason of his failure to obtain a sufficient quantity of hot water. We think this evidence should have been excluded. Fleming v. Peck, 48 Pa. 309.
While anticipated profits may be recovered in those cases where there is a certain standard or fixed method by which they may be estimated and determined with a fair degree of accuracy, yet the courts are well-nigh unanimous in holding that where such profits are of an uncertain, contingent, and speculative character, they are not to be allowed in compensation for the injury. Machine Co. v. Tobacco Co., supra, and cases there cited. In some cases profits are the best possible measure of the damages sustained by the injured party, for the very reason that the loss is indisputable, and the amount can be estimated with almost absolute certainty. The case of a contract for the delivery of cotton or any other article, which at all times finds a ready sale at a current market price, is an apt illustration. If such a contract be not performed, the purchaser may recover the advance beyond the purchase price; and this, though not recovered under the name of profits, *Page 604 
is really nothing else. "It often happens, also, that one contract, the performance of which will result in certain and definite profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits under the other is a necessary and immediate consequence. There is no difficulty in saying in some such cases that profits lost are the proper measure of damages." Allisv. McLean, 12 N.W. 642.
But the profits of running a barber shop are too uncertain, doubtful, and speculative to be capable of definite ascertainment. They depended upon many circumstances, among which are skill, ability to attract and hold patronage, the character of competition of others in the same business, and many other contingencies. One man may fail while another prospers; and the same man may fail at one time and prosper at another, though the prospective outlook may seem equally favorable at both times. If damages for breach of contract, like the one in the case at bar, were to be determined on estimates of probable profits, no landlord could know in advance the extent of his liability. It is, therefore, very properly held, in cases like the present, that the lessee, complaining of a breach of a covenant in his lease, must point out elements of damage more certain and more directly traceable to the injury than loss of prospective profits from his business.
Damages for loss of probable and uncertain profits of business, in which the lessee may be engaged on the demised premises, are too remote and speculative to be recovered in an action on a covenant (564) in the lease. Cleveland, etc., R. Co. v. Mitchell, 84 Ill. App. 206; 24 Cyc. 922.
Ordinarily the amount of loss which a party to a contract would naturally and probably suffer from its nonperformance, and which was reasonably within the minds of the parties at the time of its making, is the measure of damages for the breach of said contract. But speaking more directly to the test as applied to cases like the one at bar, where the gist of the action is the deprivation, in whole or in part, or the benefit of a lease, in the absence of any special circumstance brought home to the knowledge of the lessor, the general statement of the rule is that the tenant is entitled, as the measure of his damages, to the difference between the rental value of the premises for the term, in the condition as contracted to be, and the rental value in their actual condition. Kelloggv. Malick, 125 Wis. 239; Alexander v. Bishop, 59 Iowa 572. And if the contract be made for a particular use by the lessee, the rental value for that use will be the standard by which damages may be awarded. 3 Southerland on Damages (3 ed.), 872; Bien v. Hess, 102 F. 436. *Page 605 
In 24 Cyc. 922, the author deduces the following statement of the law from numerous decisions on the subject now in hand: "The measure of the lessee's damages for the breach of a covenant in a lease is usually the difference between the market rental value of the premises and the rent agreed to be paid for the same. The lessee is likewise entitled to recover such damages as result as an immediate consequence of the breach, such as injury to crops, goods, machinery, furniture, etc., together with any necessary expenditure of time or money. Damages for loss of probable profits of business in which the lessee may be engaged on the leased premises are too remote and speculative to be recovered in an action on a covenant in a lease." The first sentence in this quotation is supported by what is said in a number of cases, and, as a general rule, it may be taken to be true and accepted as correct — the stipulated rent, in the absence of other evidence, being regarded as the fair rental value of the demised premises in the condition as called for in the lease. But, where the tenant has obtained an advantageous contract, and the reserved rent is less than the real rental value of the premises, he ought not to be deprived of his bargain. To hold otherwise would be to offer an inducement to the lessor, in such a case, to repudiate his obligation. On the other hand, if the landlord has made a good bargain and leased the premises for more than their rental value, he should not be denied the benefits thus accruing to him under his contract. A contrary holding would amount to awarding the tenant in such a case more than compensatory damages. In other words, under this measure the lessee would be penalized if he made a good bargain and rewarded too much if he made a bad one. Guano Co. v. LivestockCo., 168 N.C. 450, and cases there cited. However, as (565) a practical question, in most cases, in the absence of evidence showing the facts to be otherwise, the two statements would accomplish substantially the same result. Hence, the distinction here pointed out, in the ordinary case, may prove to be more theoretical than real. Nevertheless, we have undertaken to state the rule correctly; for in the absence of any mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris.Burch v. Bush, 181 N.C. 128.
By rental value is meant, not the conjectural or even probable profits which might accrue to the plaintiff from his business, but the fair value, to be ascertained by proof of what the premises would rent for in the open market, or by evidence of other facts from which the fair rental value of the premises may be determined. Herpolsheimer v. Christopher (Neb.), 9 L.R.A. (N.S.) 1127. *Page 606 
The plaintiff may also recover such special damages, when specifically set forth and proven, as have been directly and necessarily occasioned by the defendant's wrongful act or default, and which were reasonably within the minds of the parties at the time of the making of the contract. Sloanv. Hart, 150 N.C. 269, and cases there cited. Adair v. Bogle, 20 Iowa 238;Trull v. Granger, 8 N.Y. 115; Gilley v. Hawkins, 48 Ill. 308. But if the plaintiff, by the exercise of reasonable effort and care on his part, could have prevented such damages, both general and special, it was his duty to do so; and so far as he could have thus prevented them, he will not be permitted to recover therefor. Robrecht v. Marling, 29 W. Va. 772.
The defendant was entitled to have the jury instructed on the issue of damages substantially as requested. "Some measure of damages should have been given to the jury for their guidance," and it was not sufficient, under the facts of the instant case, to instruct them that in the event they came to answer the third issue, to allow the plaintiff "a reasonable compensation," subject to the duty which the law imposed upon him of using reasonable efforts to mitigate the loss. Cherry v. Upton, 180 N.C. 4.
The line which divides direct and proximate from remote and consequential damages is sometimes shadowy and difficult to trace. Indeed, courts and juries are often perplexed in determining, in certain cases, whether a given loss falls within or beyond the boundary line which separates recoverable from nonrecoverable damages; and in many cases, notwithstanding the general rules laid down for the admeasurement of damages, much must still be left to the good judgment and common sense of the jury. No better system has been devised for the settlement of disputes than a trial by jury, and this right is (566) vouchsafed and preserved to us in the fundamental law of the land. It is seldom that twelve minds, guided by correct legal instructions, will agree upon an unrighteous conclusion. But certain rules, founded in reason and sound principle, have been established for the trial of causes, like the present, and it was error for his Honor not to have given them to the jury in response to the defendant's prayer.
For the errors, as indicated, there must be another trial, and it is so ordered.
New trial.
Cited: Gulley v. Raynor, 185 N.C. 98; Tobacco Assoc. v. Bland,187 N.C. 358; Gossett v. McCracken, 189 N.C. 118; Lane v. R. R.,192 N.C. 291; Monger v. Lutterloh, 195 N.C. 277; Corbett v. R. R.,205 N.C. 88; Pemberton v. Greensboro, 208 N.C. 470; Chesson v. ContainerCo., 216 N.C. 339; Switzerland v. Hwy. Comm., 216 N.C. 458; *Page 607 Parris v. Fischer Co., 221 N.C. 112; Troitino v. Goodman, 225 N.C. 413;Tarkington v. Printing Co., 230 N.C. 359; Trucking Co. v. Payne,233 N.C. 639; Perkins v. Langdon, 237 N.C. 171, 172; Perry v. Doub,238 N.C. 237; Scott v. Foppe, 247 N.C. 71; DeBruhl v. Hwy. Comm.,247 N.C. 687.