HOMELITE, a Division of Textron, Inc., a Rhode Island Corporation, Plaintiff,

v.

TRYWILK REALTY COMPANY, Inc., a North Carolina Corporation, Defendant.

Civ. A. No. 1161.

United States District Court
W. D. North Carolina,
Charlotte Division.

April 24, 1959.

Bell, Bradley, Gebhardt & DeLaney, Charlotte, N. C., for plaintiff.

Cochran, McCleneghan & Miller, Charlotte, N. C., for defendant.

WARLICK, District Judge.

Plaintiff in instituting this action, seeks to recover damages sustained by it in excess of $3,000, arising from an alleged breach of a written contract. Additionally it seeks a judgment to the effect that the purported contract be cancelled and declared void and of no effect. The case was tried by the court without a jury. Under Rule 52 of Federal Rules of Civil Procedure, 28 U.S. C.A., the following facts are found:

Plaintiff is a Rhode Island corporation. The defendant is a North Carolina corporation.

For some time prior to the 13th of March, 1956, plaintiff had been engaged in the sale and service of Homelite products in the Charlotte area and was desirous of leasing a building suitable for its purposes in the sale and distribution of its chain saw business throughout the two Carolinas and Tennessee, with its headquarters in Charlotte. All of its affairs were attended to by James W. Thompson, its District Manager, in Charlotte.

The defendant was the owner of a warehouse building situate on the premises known as 106 South View Place, Mecklenburg County, about a mile to a mile and a half west of the Charlotte city limits. This building had just been erected and was not in any wise finished on the inside. It was completed on the outside. It was 55 feet wide and 135 feet long. The lot on which it was located extended about 15–20 feet beyond the building on either side, and was considerably longer than the building in

the rear. There was sufficient space between the front of the building and the roadway for the parking of ten or more cars, at least. A concrete floor had been poured in the building and the necessary roughing in of plumbing fixtures for two commodes and two lavatories had been completed. No electric fixtures had been placed, no partitions of any kind had been built in, and no connections of any facilities had been made. The property was situate on Wilkinson Boulevard, a four lane highway running between Charlotte and Gastonia. City water was available but no sewer had been laid beyond the actual city limits. The location of the property was in a highly developed industrial area.

Plaintiff's representative, Mr. Thompson, after learning that the property was for rent, contacted H. B. Meiselman, President of the defendant corporation, went out with him and looked over the premises, observed the existing conditions, and discussed at length the proposed terms of the lease agreement. Thereafter a written contract was entered into, dated March 13, 1956, executed by the defendant company on the 24th of March, and finally after some suggested changes, was officially executed by the plaintiff on the second day of April. The plaintiff then began the changes that it proposed to make in said building,—purchased materials therefor, and expended certain monies for labor and other items in making the contemplated improvements, all as alleged in the sum of $3,724.01, and paid the sum of $200 for rent for the month of April.

On April 24, on learning that there were no sewer connections to the building, plaintiff's Mr. Thompson talked with Mr. Meiselman and learned that a septic tank was all that had ever been contemplated and such would be installed on the premises. That this would be done as was determined at the full expense of the defendant. Mr. Thompson went out and was shown the proposed location of the septic tank. The plumbing contractor who had originally done the roughing in of the sewer and water facilities was contacted and accordingly made arrangements to place said septic tank and the necessary drains as required by the State Board of Health.

On May 3, plaintiff through its Mr. Thompson wrote defendant a letter informing it that the contract had been breached by the defendant in the failure to have sewer connections and that plaintiff was rescinding its contract and was surrendering the keys to the building. Thereafter on May 7, the two keys were tendered to Mr. Meiselman and a receipt requested. The keys were not accepted and the receipt was not signed, but by Registered letter dated May 22, the keys were forwarded to the defendant.

The lease was for a period of five years, beginning April 1, 1956, and provided for a rental of $200 per month for the first four months, and thereafter $250 per month, payable in advance.

The Ford Motor Company has a large plant in the immediate area; the Firestone Company maintains its offices in this section; likewise the Tryon Company,—all of which corporations have a large office force and a considerable staff of workers. Each of these concerns, together with every business conducted in the area, uses septic tanks for sewer facilities.

Prior to the actual signing of the contract no mention was made of sewer or water connections, and other than what was written in the contract, no statement had been made by the defendant which would indicate that there were sewer and water connections.

J. W. Thompson, plaintiff's representative, had lived in Charlotte since 1953 and had represented plaintiff during that time. He worked on a gross commission basis, and from such earnings on his part, paid the rent and all other operating expenses on any property leased by plaintiff in the territory.

On May 9, 1956, the plaintiff's representative Thompson purchased a tract of land which is now leased to the plaintiff and took title thereto in his name and

that of Mrs. Thompson, and in October he and Mrs. Thompson formed a corporation and deeded this property to it.

The portion of the contract which has brought about this suit is this:

*"Lessor represents and warrants water and sewer connections have been made to the building."*

There is no dispute regarding any other terms in the lease.

Contentions:

The plaintiff contends that since it was discovered that sewer connections had not been made to the building and it learned that it would be necessary to install a septic tank, that this of itself was such that it gave plaintiff the right to rescind the contract and vacate the premises, which it did, and to seek a recovery of the monies expended for the improvements, together with the rent thus far paid. That it did not want to use a septic tank or like facilities, and it thereupon being of the opinion that the contract was breached, it so acted thereon and leased the property purchased by Thompson, where its business is now being carried on. That it contemplated using the space on the north side of the building for customer parking and that if such was graded and put into shape for parking it would naturally effect the septic tank, the drains thereto, etc. That it would normally have six to eight employees to use the toilets and likely an occasional customer.

The defendant contends that there was no mention of sewer or water connections prior to the time that the contract was entered into; that facilities had been installed in the building for sewer and water connections; that since there were no city sewer mains in that area that type of disposal could not have been contemplated by the parties; that all the business interests in that section used septic tanks which were in full approval; that its land not occupied by the building proper was fully suitable for the installation of the septic tank; that city water was available and connections could be made. That its intent and purpose throughout was to place a septic tank and when notified that the work that plaintiff was doing to the interior of the building had reached that stage where the facilities should be placed, that it contacted a reputable plumbing contractor and instructed him to do the work and that it in no wise breached the contract, for that a septic tank affords the same equal facilities as that brought about by a sewer connection, when properly installed.

The plaintiff quickly moved into court. The complaint was filed on May 7, 1956; thereafter answer was filed on May 31. Among other allegations the defendant sets up a counterclaim in which it seeks to recover the amount of unpaid rent in line with the terms of the contract.

Following the plaintiff's attempted abandonment of the premises and rescission of the contract, the defendant made a determined effort to lease the property so as to minimize the damage and was successful in leasing it for one year to the Goins-Stratford Furniture Company, from October 1, 1956, to September 30, 1957, and at a rental of $150 a month. Since said date the building has not been occupied though the defendant has made every effort to secure a tenant.

Conclusions:

We must look to the North Carolina law for our guide in this decision. In a case directly in point, and where the jury had found by its answer to the issue submitted, that the defendant had breached its contract, the court had this to say:

"But this, we apprehend, and no more, in the absence of such a right reserved in the lease, would not justify the plaintiff in abandoning the premises and suing for damages, without first putting the lessor in default by affording him a reasonable opportunity, after notice, to comply with the terms of his agreement. Green v. Redding, 92 Cal. 548, 28 P. 599." Brewington v. Loughran, 183 N.C. 558, 561, 112 S. E. 257, 258, 28 A.L.R. 1543.

In Westerman v. Champion Fiber Co., 162 N.C. 294, 297, 78 S.E. 221, 222, Hoke, J., observed, "It is not every breach of contract that will operate as a discharge and justify an entire refusal to perform further," and speaking generally to the subject, quoted with approval the following from Anson's Law of Contract, p. 356: "But though every breach of the contractual obligation confers a right of action upon the injured party, it is not every breach that relieves him from doing what he has undertaken to do. The contract may be broken wholly or in part, and, if in part, the breach may not be sufficiently important to operate as a discharge, or, if it be so, the injured party may choose not to regard it as a breach, but may continue to carry out the contract, reserving to himself the right to bring action for such damages as he may have sustained." See, also, Willis v. Branch, 94 N.C. 142.

Therein the Court further said:

"But we shall not now undertake to formulate any general statement as to what degree of dereliction or default on the part of the landlord, in the absence of any pertinent and controlling stipulation in the lease, will absolve the tenant from his obligation to pay the rent, subsequently accruing under his contract, and thus warrant him in forsaking the premises and suing for damages; for this we perceive, is a question which must be determined by the facts and circumstances of each particular case. Ordinarily, however, it may be said that a contract is considered to remain in force until it is rescinded by mutual consent, or until the opposite party does some act, inconsistent with the duty imposed upon him by the contract, which amounts to an abandonment of it on his part. Dula v. Cowles, 52 N.C. [290], 293; Hutchins v. Hodges, 98 N.C. [404], 405, 4 S.E. 46." Brewington v. Loughran, 183 N.C. 558, 561, 562, 112 S.E. 257, 258, 28 A.L.R. 1543.

 A careful study of the facts as they apply to the applicable North Carolina decisions leads me to believe that plaintiff was not entitled to cancel the contract, the subject of this action, nor to recover any sum whatever of the defendant.

On the other hand, I am of the opinion that defendant is entitled to recover of plaintiff by way of its counterclaim and cross-action, the rent as agreed upon in said contract, less such amounts as it received from renting the property to others.

Counsel will submit decree.