HOMELITE, a Division of Textron, Inc., a Rhode Island Corporation, Appellant,

v.

TRYWILK REALTY COMPANY, Inc., a North Carolina Corporation, Appellee.

No. 7917.

United States Court of Appeals Fourth Circuit.

Argued Oct. 21, 1959.

Decided Dec. 5, 1959.

Ernest S. DeLaney, Jr., Charlotte, N. C. (Bell, Bradley, Gebhardt & DeLaney, Charlotte, N. C., on brief), for appellant.

F. A. McCleneghan, Charlotte, N. C. (Cochran, McCleneghan & Miller, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and BUTLER, District Judge.

BOREMAN, Circuit Judge.

This was an action instituted by a lessee (Homelite) to rescind, cancel and declare void a lease agreement on the grounds of false and fraudulent representation and to recover special damages incurred by it in preparing the leased premises for lessee's intended uses and purposes. The defendant lessor (Trywilk) counterclaimed for rent due under the lease agreement. The case was heard by the court without a jury and the court concluded that Homelite was not entitled to rescind the lease contract, denied Homelite's claim for damages and awarded Trywilk the sum of $5,950.00 on its counterclaim.

Homelite had been engaged for some time in the sale and service of Homelite products in the Charlotte, North Carolina, area. It desired to change its location because of inadequate parking facilities and to lease a building suitable for its purposes. Trywilk was constructing a warehouse building on the premises at 106 Southview Place, Mecklenburg County, a mile or more west of the Charlotte city limits. The building was completed on the outside but was not finished on the inside. It was fifty-five feet wide and one hundred and thirty-five feet long. The north line of the lot was fifteen or twenty feet distant, at the front of the building, from the building line. The lot, in the rear, was somewhat longer than the building. The concrete floor had been poured in the building and the necessary roughing in of plumbing fixtures for two commodes and two lavatories had been completed although it was impossible for one looking at this roughed in plumbing to tell whether or not it was connected to outside water and sewer lines. The property was located in an industrial area and city water was available but no sewer lines had been laid beyond the actual city limits.

Homelite's representative, Thompson, after learning that the property was for rent, contacted one Meiselman, President of Trywilk, and together they looked over the premises, observed patent conditions and discussed the proposed term of a lease. They are not in agreement as to their discussion of all provisions, but a lease was prepared by the attorney for Homelite and was fully executed and acknowledged by both parties by April 2, 1956.

Following the execution of the lease, Homelite began installing plumbing and electrical fixtures and the erection of interior partition walls to form separate offices. Late in April, Homelite first learned that no sewer connections had been made to the building, that no sewer facilities were available and that Trywilk proposed to install a septic tank at its own expense. Thompson was shown the proposed location of the septic tank and Trywilk arranged with a plumbing contractor to place the septic tank and drains in compliance with the requirements of the State Board of Health. It was proposed to locate the tank at the northeast corner of the building and near the roughed in plumbing fixtures where the northern boundary line of the lot was approximately eight or ten feet from the building.

On May 3, 1956, Homelite notified Trywilk by letter that the agreement had been breached by the lessor for failure to provide sewer connections and that the lease agreement was being rescinded. On May 7, 1956, the keys were tendered to Trywilk and a receipt requested. The keys were not accepted and the receipt was not executed but, by registered letter dated May 22, 1956, the keys were sent to Trywilk.

The lease agreement granted to Homelite the use of an alleyway to the south side of the building, such use to be in conjunction with an adjoining lessee, the exclusive use of one-half of the space at the rear of the building for parking and *exclusive use of all the land on the north side of the building,* but contained no provision as to the installation of a septic tank on the premises. The lease contained the following provisions:

"\* \* \* The lessor represents and warrants that water and sewer connections have been made to the building."

"The lessee [Homelite] agrees to pay *all service charges for utilities* including, but not limited to, electricity, heat, water *and sewer* \* \* \*" (Emphasis supplied).

The primary question for determination is whether Homelite was justified in rescinding the lease because of false and fraudulent representations and for breach of the provision as to "sewer connections".

▆ Trywilk, through its President, Meiselman, admits the reading of the lease before it was executed. The court found as a fact that, prior to the actual execution of the lease, no mention had been made of sewer and water connections and, other than the express provision in the lease agreement, no statement had been made by Trywilk indicating that sewer and water connections had been made. Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires us to accept the court's findings of fact where there is evidence to support them unless we are able to say that the findings are clearly erroneous.

From the record, it seems clear that there had been some discussion as to sewage disposal and that the District Court must have overlooked the testimony in that connection. Both Thompson and Homelite's attorney, DeLaney, testified that, in a meeting in Meiselman's office prior to the drafting of the lease, Mr. Meiselman warranted that the plumbing had been connected to the sewer. During Meiselman's testimony, after denying that he had made any warranty as to sewer connections, on cross-examination was asked if the words "septic tank" were ever mentioned in his office. First he stated that these words had been mentioned but later seemed to qualify this statement as shown by his following testimony:

"Q. All right. Was the word 'septic tank' ever mentioned in your office?

"A. Yes, sir.

"Q. At any time, Mr. Meiselman?

"A. Yes, sir. Yes, sir. Well I couldn't give him the sewerage because this man knew and anybody who has lived in Charlotte for a year knows that there is no sewerage in that part of the town; *so I had to mention* a septic tank." (Emphasis supplied.)

Homelite contends that it intended to use the land at the north side of the building for parking employees' and customers' automobiles, offering in support of this contention the testimony of Thompson and DeLaney, its attorney. Mr. DeLaney drew the lease and testified that he did not use the term "parking" as to that particular portion of the premises because Homelite desired the exclusive use thereof as provided in the lease and did not want to limit it as to parking. Homelite further contends that locating the septic tank at the available point would prevent parking and would thus materially defeat

the exclusive use by Homelite of the land on the north side of the building. Further supporting this contention, Homelite offered as a witness the Sanitarian with the Mecklenburg County Health Department, who testified that he had determined that a septic tank could be placed at the northeast corner of the building but that "it was in an area where this gentleman, I believe, told me that the parking space was going to be, and it is not a recommended procedure for parking to be over the nitrification line and the septic tank." The witness further stated that parking over the septic tank field tended to crush the soil pipes, thus interfering with the natural evaporation process. On cross-examination, the Sanitarian further indicated his attitude as follows:

"Q. There was room enough on there for a septic tank, wasn't there?

"A. The only place that I found that I thought a septic tank would go, it would be the area where he told me there was going to be parking over it.

"Q. But there was a space on there where you could put a septic tank?

"A. *If he was not going to park over it.*" (Emphasis supplied.)

Trywilk contends that since there were no city sewer mains in the area, disposal by that means could not have been in contemplation by the parties; that other businesses in the area successfully used septic tanks; that the land occupied by the building was suitable for the installation of a septic tank; that it had arranged with a reputable plumbing contractor to install the septic tank when notified that everything was in readiness, and that the septic tank would afford facilities equivalent to those provided by connection with a city sewer main.

■ It is well settled in North Carolina that the court must interpret the contract *as written* so long as its provisions are clearly expressed. The only office of judicial construction is to remove doubt and uncertainty. Barham v. Davenport, 1958, 247 N.C. 575, 101 S.E.2d 367. The point of disagreement here is whether the failure to comply with the lease provision as to sewer connections is a breach of warranty for which a damage award would be adequate, or whether such provision is a false and fraudulent representation justifying the rescission of the contract.

■ The Supreme Court of North Carolina in Cofield v. Griffin, 1953, 238 N.C. 377, 78 S.E.2d 131, 133, 40 A.L.R. 2d 966, defines the essential elements of fraud as follows: "(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation, and acted upon it; and (6) that plaintiff thereby suffered injury."

■ Fraud is material to a contract when the contract would not have been made if the fraud had not been perpetrated. A false representation is material if the fact untruly asserted, or wrongfully suppressed if it had been known to the party, influenced his judgment or decision in entering into the contract. White Sewing Machine Co. v. Bullock, 1912, 161 N.C. 1, 76 S.E. 634; Starnes v. Raleigh, C. & S. Ry. Co., 1915, 170 N.C. 222, 87 S.E. 43. The court found, as a fact, that no sewer had been laid beyond the actual city limits of Charlotte and thus it is clear that the representation that sewer connections had been made was false. Witness Thompson stated: "If we had known that there was no sewer, we would not have entered into the lease. If we had wanted to enter into a lease with a septic tank and it had to be connected, we would have so worded the

lease." This testimony is uncontradicted.

We have examined the recorded testimony in an effort to find some reason for the warranty provision in the lease as to sewer connections. The District Court's finding that no mention was made of sewer connections during preliminary conversations appears to have been made in disregard of the direct testimony of Homelite's two witnesses that the matter was discussed and the testimony of Trywilk's president that they discussed the installation of a septic tank. If we should accept the court's finding that there was no preliminary discussion of sewer connections, we would be required to interpret the lease provision as written. Barham v. Davenport, supra. However, if we should reject the court's finding and conclude that such preliminary conversations were had, then the provision in the lease requiring Homelite to pay all service charges for utilities, including sewer charges, becomes more significant. It must be remembered that the attorney for Homelite prepared the lease and the inclusion of the provision as to the payment of sewer charges is strong evidence of the fact that Homelite believed that sewer connections had been made; otherwise, the agreement to pay sewer charges would be meaningless since the use of a septic tank would involve no utility charges. Trywilk offers the explanation and argument that the inclusion of the provision as to the payment of sewer utility charges was intended to cover the situation if a city sewer main should be provided during the five-year term of the lease, but we cannot accept this argument since the warranty as to existing sewer connections is couched in the present tense and the terms of the lease, unequivocally expressed, must be given effect.

It becomes important to determine whether Homelite reasonably relied upon the representation as to sewer connections, acted upon it and thereby suffered injury. The parties negotiated the whole agreement which contained the unequivocal representation and warranty that sewer connections had been made to the building. There was strong evidence to support Homelite's contention that it relied upon this representation, and it is apparent that Homelite suffered injury as a result of such reliance. The District Court found that, shortly after the lease was executed, Homelite began the work necessary to condition the interior of the building for its own purposes. It purchased materials, expended money for labor and other items in making the contemplated improvements, and paid the sum of $200.00 for rent for the month of April, all prior to the very moment when it was ascertained that the installation of a septic tank would interfere with the use of the land to the north of the building for desired parking purposes.

The District Court found, as a fact, that there was space on the lot sufficient to accommodate ten or more cars between the front of the building and the roadway. Thompson testified that the reserved space at the rear of the building was to be used in connection with shipment of purchases to customers. Meiselman testified that adequate parking facilities were available to Homelite without using the north side of the building, but he admitted on cross-examination that he did not know the number of cars to be parked at the building. Therefore, there is no reliable testimony to rebut the statements of Thompson and Homelite's attorney, DeLaney, that Homelite contemplated using the north side of the building for parking and that it was for that purpose they had made specific provision for exclusive use. Add, further, the testimony of the Sanitarian for the Health Department that it is not recommended procedure to allow automobiles to park over the septic tank field, and it thus becomes clear that the warranty relating to the sewer was, in fact, very material to Homelite.

Trywilk contends that rescission of a contract is an extreme measure and cannot be successfully accomplished un-

less the breach goes to the root of the contract. For this proposition, our attention is directed to Childress v. C. W. Myers Trading Post, Inc., 1957, 247 N.C. 150, 100 S.E.2d 391, 395, where the court stated: "Not every breach of a contract justifies a cancellation and rescission. The breach must be so material as in effect to defeat the very terms of the contract. * * *" We do not disagree with the principle as stated in the Childress case. See also 17 C.J.S. Contracts, § 422, page 906; 12 Am. Jur. Contracts, § 440, page 20. However, it is our opinion that the breach here was material to Homelite, resulted in a limitation and restriction in the exclusive use of the premises and was not such a breach as was discussed in the Childress case.

The court found, as a further fact, that Thompson, Homelite's representative, had lived in Charlotte since 1953, had represented Homelite during that time, was working on a gross commission and from such earnings paid the rent and all other operating expenses on any property leased by Homelite in the territory; also that on May 9, 1956, Thompson purchased a tract of land, took title thereto in his name and that of Mrs. Thompson, and formed a corporation to which the property was deeded and which is now leased to Homelite. It is not clear what inference the court may have drawn from these facts but it is clear that this transaction occurred following Thompson's discovery of the lack of sewer facilities and the proposed installation of a septic tank.

Trywilk further contends that the law does not permit one to claim misrepresentation where he has an opportunity to ascertain the real facts and makes no effort whatsoever to investigate, citing Calloway v. Wyatt, 1957, 246 N.C. 129, 97 S.E.2d 881. There the buyer of property, relying upon representations as to a certain supply of water from a well, made no investigation although he could easily have done so. The application of the Calloway case

must be limited to a situation where the defect is such that it can be readily determined upon reasonable inspection or investigation. Homelite was dealing with one known to be a property holder of long experience in the area and, in view of the fact that the transaction was shadowed by no suspicious circumstances, we conclude that Homelite was justified in relying upon the representation.

The District Court in its conclusions quoted from the case of Brewington v. Loughran, 1922, 183 N.C. 558, 112 S.E. 257, 258, 28 A.L.R. 1543, as follows: "But this, we apprehend, and no more, in the absence of such a right reserved in the lease, would not justify the plaintiff in abandoning the premises and suing for damages, without first putting the lessor in default by affording him a reasonable opportunity, after notice, to comply with the terms of his agreement." The District Court held that the Brewington case is directly in point here but with this conclusion we cannot agree. In the Brewington case, the written lease demised premises described as a certain barber shop "including the fixtures, hot and cold water." The lessor did not furnish hot water and contended that he agreed to furnish only such hot water as came from the hotel boiler. It was logical that the court should hold that the lessee was not justified in abandoning the premises without first giving the lessor a chance to fulfill his agreement. The Brewington case can have no application here since no amount of notice could afford Trywilk an opportunity to comply with the representation and warranty as to sewer connections. There was no sewer in the area and sewer connections could not possibly be made.

█ We are of the opinion that the essential elements of fraud and misrepresentation as defined in Cofield v. Griffin, supra, are present here; that the false representation was material and that Homelite would not have entered into the lease agreement if it had

694

known the true facts; that it was justified in rescinding the lease and is entitled to recover proper damages incurred by it in preparing the leased premises for its intended uses. The case must be reversed and the cause remanded for further proceedings consistent with the views here expressed.

Reversed and remanded.