[No. 13737–9–I.   Division One.   October 6, 1986.]

CRAIG D. CORP, ET AL, *Respondents,* v. ATLANTIC–RICHFIELD COMPANY, *Petitioner.*

*Bruce M. Pym, Gary Robbins,* and *Graham & Dunn,* for petitioner.

*Carl A. Taylor Lopez* and *Lopez, Fantel & Taylor,* for respondents.

COLE, J.*—Atlantic Richfield Company (ARCO) petitions for discretionary review of a trial court decision that certain convenience stores operated in conjunction with ARCO gas stations constituted franchises under RCW 19.100, the Franchise Investment Protection Act (FIPA).

## FACTS

Respondents, Craig Corp, et al, were originally lessees of ARCO service stations. In 1976, ARCO offered an arrange-

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

ment to these lessees and others, by which their service bays would be converted into convenience stores. The arrangement was formalized through an addendum to pre-existing service station leases. The addendum provided for "special facilities rent" to be paid equal to 10 percent of monthly gross sales (not including gasoline), with a specified minimum rent.

At the time of trial, the percentage charged by ARCO for special facilities rent was 14 percent of gross sales.

ARCO provided a large "mini–market" sign to each lessee, along with a briefcase and a plaque for completing a special training school, and mini–market uniforms for purchase, all containing a mini–market logo. Several years after the installation of the mini–market sign, ARCO replaced it with a sign that placed the word ."ARCO" above the word "mini–market" on the sign.

In 1979, ARCO presented mini–market lessees with the opportunity to become am/pm Mini–Market franchisees. Respondents allege that since the franchise offering, mini-market lessees who refused to become am/pm franchisees have received substandard treatment from ARCO. Respondents allege that no promotions or promotional items have been furnished to the mini–markets nor has any maintenance been done on the mini–markets since the am/pm offering. Further, respondents allege that the ARCO representatives provided to them subsequent to 1979 were neither knowledgeable nor helpful. According to the respondents, the am/pm franchises have received continual maintenance since their inception.

The respondents limited their claims to the FIPA in their opening argument. Following the direct testimony of the first witness, both ARCO and the respondents moved for summary judgment on the issue of whether the mini-market leases were franchises, entitled to protection under FIPA. If ARCO were granted summary judgment, then it would prevail in the overall case.

To resolve the question presented by the summary judgment motions, the trial court conducted a trial on the issue

of the franchise fee, but heard only oral argument on the other two elements required to find a franchise: the license to use a trade name and the presence of a community interest.

The trial court found that the mini–market leases were franchises under the FIPA. This appeal timely followed.

## STANDARD OF REVIEW

The procedure carried out in the court below was hybrid in nature. The court conducted a trial on the franchise fee issue, but granted a motion for summary judgment on the issues of license to use a trade name and community interest. ARCO does not assign error to the finding of a community interest and concedes that when the service station lease and addendum are read together, the trademark licensing element is met. Therefore, this court need only determine the appropriate standard of review for the franchise fee issue.

Following a trial, this court is bound by findings of fact which are supported by substantial evidence. *Beeson v. ARCO,* 88 Wn.2d 499, 563 P.2d 822 (1977). Whether a statute applies to a factual situation is a question of law and fully reviewable on appeal. *Keyes v. Bollinger,* 31 Wn. App. 286, 640 P.2d 1077 (1982).

## FRANCHISE FEE

RCW 19.100.010(4) defines a franchise:

"Franchise" means an oral or written contract or agreement, either expressed or implied, in which a person grants to another person, a license to use a trade name, service mark, trade mark, logotype or related characteristic in which there is a community interest in the business of offering, selling, distributing goods or services at wholesale or retail, leasing, or otherwise and in which the franchisee is required to pay, directly or indirectly, a franchise fee . . .

RCW 19.100.010(11) defines "franchise fee":

"Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a

business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for the mandatory purchase of goods or services or any payment for goods or services available only from the franchisor, or any training fees or training school fees or charges; however, the following shall not be considered payment of a franchise fee: (a) the purchase or agreement to purchase goods at a bona fide wholesale price; (b) the purchase or agreement to purchase goods by consignment; if, and only if the proceeds remitted by the franchisee from any such sale shall reflect only the bona fide wholesale price of such goods; (c) a bona fide loan to the franchisee from the franchisor; (d) the purchase or agreement to purchase goods at a bona fide retail price subject to a bona fide commission or compensation plan that in substance reflects only a bona fide wholesale transaction; (e) the purchase or lease or agreement to purchase or lease supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement at their fair market or rental value; (f) *the purchase or lease or agreement to purchase or lease real property necessary to enter into the business or to continue the business under the franchise agreement at the fair market or rental value;* . . .

(Italics ours.)

The statutory definition suggests that a franchise fee "includes 'fees hidden in the franchisor's charges for goods or services.'" *Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1220 (9th Cir. 1983) (quoting *Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 892, 658 P.2d 1267 (1983)); *see also* Chisum, *State Regulation of Franchising: The Washington Experience,* 48 Wash. L. Rev. 291, 294–95 (1973).

One such "hidden" possibility is the percentage lease. If the two portions of the statute are read together, it would appear that a percentage lease which also constituted fair rental value of the property would not be a franchise fee under RCW 19.100.010(11). Although no cases have determined the precise question raised here, the concept of fair

market value with respect to goods has been examined by the Ninth Circuit Court of Appeals. In *Blanton,* service station lessees brought an action against Mobil for, *inter alia,* violation of the Washington FIPA. The lessees were threatened with termination of their dealerships, unless they purchased Mobil motor oil, tires, batteries, etc., from Mobil at inflated prices.

The trial court granted a directed verdict for Mobil on the lessees' FIPA claim, ruling that as a matter of law the FIPA did not apply, but giving no basis for that interpretation. *Blanton,* at 1212. The Ninth Circuit reversed the trial court after determining that service stations were not exempt from the act and that a franchise fee had been paid through the mandatory purchase of oil and other items.

Additionally, the court determined that the purchases were not exempt by RCW 19.100.010(11)(a), purchase of goods at bona fide wholesale price, nor by (e), purchase or lease at fair market or rental value of supplies or fixtures, because the price charged by Mobil exceeded the fair market value as evidenced by the ability of the lessees to buy the items more cheaply at other retail outlets. *Blanton,* at 1211.

The terms "fair market value" or "fair rental value" have been construed in the landlord and tenant context. In *Maddox v. Yocum,* 109 Ind. App. 416, 31 N.E.2d 652 (1941), Maddox leased certain real property to Yocum, who conducted a gasoline service station business on the property. The agreement between the parties for rent was for a certain sum for each gallon of gas sold. Maddox entered and ejected Yocum from the premises.

In calculating the damages due Yocum, the court rejected a formula based on lost profits. Quoting *Brewington v. Loughran,* 183 N.C. 558, 112 S.E. 257, 28 A.L.R. 1543 (1922), the *Maddox* court noted that:

> "By 'rental value' is meant, not the conjectural or even probable profits which might accrue to the plaintiff from his business, but the fair value, to be ascertained by

proof, of what the premises would rent for in the open market . . .

*Maddox,* at 425.

In *Austin v. Teague,* 570 S.W.2d 389 (Tex. 1978), rental value was defined as:

"that amount which, in the ordinary course of business, the premises would bring or for which they could be rented, or the value, as ascertained by proof of what the premises would rent for, and not the probable profit which might accrue."

*Teague,* at 394 (quoting 76 C.J.S. *Rental* 1168 (1952)).

Each ARCO lessee pays the same percentage of gross sales, regardless of the value of the rented facility, as found by the trial court and supported by substantial evidence. No allowances are made for variations due to location, size, market, etc. While it may be possible to show that the amount actually paid by a given lessee was equal to or less than fair rental value for the property, nothing in the lease or addendum indicates an intent of the parties to limit the amount collected to fair rental value.

Additionally, the record indicates that those mini–market lessees who became am/pm franchisees after paying a $10,000 franchise fee were charged only 11 percent of convenience store profits, compared to the charge to minimarket operators of 14 percent. Presumably, the am/pm franchisees were not paying less than fair rental value to ARCO for their properties. Thus, at least the differential of 3 percent paid by the mini–market lessees constituted payment of a franchise fee. We therefore hold that the trial court's conclusion that the percentage leases between ARCO and the mini–market lessees constituted franchise fees under RCW 19.100.010 is supported by substantial evidence.

### TRADEMARK

Under the lease agreement, ARCO gave the lessees the right to use the ARCO trademark. ARCO concedes that the "trademark" aspect of the definition of a franchise is satisfied under the lease agreement. The trial court's finding on

this issue is, therefore, affirmed.

## COMMUNITY INTEREST

ARCO does not assign error to the trial court's finding of a community interest. Therefore, the trial court's determination on that issue is affirmed.

## APPLICATION OF FIPA

In *American Oil Co. v. Columbia Oil Co.*, 88 Wn.2d 835, 567 P.2d 637 (1977), an oil company sued a jobber with whom it had a sales contract for payments due under the contract. The jobber counterclaimed on the basis, *inter alia,* of violations of the FIPA. Although the Washington Supreme Court found no basis for the alleged statutory violations, the court commented in a footnote concerning the FIPA as it applies to service stations. The court noted that certain legislation pending at the time would amend the FIPA to apply to agreements granting service station dealers the right to sell gasoline under the supplier's trademark. The court considered this legislation as evidence that the FIPA did not apply to jobber sales contracts between oil companies and private corporations. *American Oil Co.,* at 841 n.4.

■ ARCO argues that *American Oil* suggests that service stations are exempt from the FIPA. In *Blanton,* the Ninth Circuit Court of Appeals reviewed the proposed legislation mentioned in *American Oil* (this legislation was never passed) and determined that the intent was to include service stations under the FIPA regardless of payment of a franchise fee. *Blanton,* at 1219–20. Thus, the *Blanton* court held that the FIPA applied to service station agreements. We agree with the *Blanton* court, finding no statutory basis to provide for an exemption from the FIPA for service stations.

The trial court's determination that the agreements between ARCO and the lessees constitute franchise fees is affirmed. The case is remanded for continuation of the trial

on the remaining issues.

SCHUMACHER, J. Pro Tem., concurs.

UTTER, J.* (concurring)—I concur in the majority's result. The appellant, ARCO, had the burden of proving, *see* RCW 19.100.220, that its percentage of sales lease came under one of the exceptions to the definition of a franchise fee. *See* RCW 19.100.010(11). The trial court found that the defendant failed to carry that burden. Were I to reweigh the evidence before the trial court, I might well have reached a different conclusion. There is, however, substantial evidence in the record to support the trial court's findings which, in turn, support its conclusions. *See Goodman v. Darden, Doman & Stafford Assocs.,* 100 Wn.2d 476, 670 P.2d 648 (1983).

Reconsideration denied February 3, 1987.

Review denied by Supreme Court May 5, 1987.