Dean JONES and Waynoka Co-Operative
Elevator Association, a corporation,
Plaintiffs in Error,

v.

Leo PARKER and J. W. Parker,
Defendants in Error.

No. 39875.

Supreme Court of Oklahoma.

Feb. 12, 1963.

Rehearing Denied March 26, 1963.

Meacham, Meacham & Meacham, Clinton, for plaintiff in error, Dean Jones.

Monnett, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for plaintiff in error, Waynoka Co-Operative Ass'n.

John B. Doolin, Herbert D. Smith, Alva, for defendants in error.

DAVISON, Justice.

This is an appeal by Dean Jones and Waynoka Co-Operative Elevator Association (defendants below) from a judgment rendered on jury verdict in favor of Leo Parker and J. W. Parker (plaintiffs below) in an action to recover the balance due on a construction contract in connection with the erection of a grain elevator. The parties will be referred to as they appeared below or by name.

The defendant Jones was the general contractor for the construction of a grain elevator, complete with machinery and conveyors, for the defendant Association, to be located on a part of a railroad right-of-way under lease to the Association. The plaintiffs were subcontractors under a contract with Jones, dated April 10, 1959, with a stated consideration of $27,383, requiring them to furnish work, material and machinery for the construction of a small building, adjoining the grain storage building, and construction of the elevator machinery, including the elevator and leg and pit excavations, for the moving and distribution of the grain to and in the grain storage building and to cars. In the contract it was provided that after performance by Jones of his construction and installations and completion by plaintiffs of their construction, the elevator was to be in operating condition. Included in the contract was an itemization of the material, work and machinery to be furnished by plaintiffs under the heading "Building & Equipment Summary." This summary consisted of 13 items with numerous subdivisions. The contract further provided:

> "Sub-Contractor agrees to commence work within three (3) calendar days after work order has been issued by Contractor and to work energetically and continuously until completion of said work, weather permitting. Furthermore, Sub-Contractor agrees to have his phase of work completed and ready for use in time for the 1959 wheat harvest."

Jones and the plaintiffs used a blueprint drawing reflecting the layout of the entire project and location of elevator machinery and with descriptive notations.

It was plaintiffs' position that they had duly commenced performance and had to a considerable extent performed the contract, when, on June 12, 1959, a windstorm

caused damage to the buildings and equipment, including the tall grain elevator leg; that plaintiffs took down the damaged equipment and it was sent to be repaired; that it was returned as repaired but all parties were of the opinion it was not properly repaired and returned the equipment for further repair; that plaintiffs were ready and willing to complete the job when the equipment came back, but that Jones completed the project; and that after crediting payments of $18,994.20 on the contractual work and extras there was due $8,292.15.

It was defendants' position that prior to the windstorm of June 12, 1959, and in connection with the work then being carried on, the plaintiffs failed to perform some work required by the contract and as to some other portions carelessly or incompletely performed the same, so that Jones had to do the work or was put to additional expense in carrying on his construction; that after the windstorm there remained work and material to be performed and furnished by plaintiffs; that plaintiffs were notified to return and complete their construction, but failed to do so, and Jones thereupon completed plaintiff's contract; that by reason of the plaintiffs' breach and taking into account the amounts paid on the contract and extra expense the plaintiffs were indebted to Jones in the sum of $5408.77 over and above the contract price and allowable extras. Jones cross-petitioned for judgment in that amount.

At the time of trial plaintiffs reduced their claim to $6999.15 and Jones reduced his cross-petition to $4803.77.

After submission of all evidence the jury returned a verdict for plaintiffs for $3700 and against Jones on his cross-petition. On later hearing the trial court also rendered judgment for $475 attorney fees and for foreclosure of plaintiffs' lien. The validity of the lien to secure any amount recovered by plaintiffs is not questioned.

The defendants contend the verdict and judgment are not supported by the evidence.

Both Leo Parker and Jones were experienced in construction work. Leo Parker appears to have had the greater experience in the construction of grain elevators. There was some difference as to their interpretation of some of the terms of the contract. Also the record reflects that either by agreement of all parties, or circumstances, some changes were made in the location of some of the construction by plaintiffs. Both sides introduced evidence in support of their respective positions as above set forth. Admittedly there remained some work to be done, and some material to be furnished, by plaintiffs after the windstorm. The parties used the "Building & Equipment Summary" to the extent that not only did they testify with reference to the items thereof, but submitted detailed written statements as to the performance claimed by plaintiffs and the expense claimed by Jones. This mode of proof directly presented to the jury the divergent contentions of the parties. It was on such evidence that the jury determined that the claim of plaintiffs should be reduced from $6,999.15 to $3700 and that the cross-petition of Jones be denied.

In Frank Harber Buick, Inc. v. Miller, Okl., 328 P.2d 716, we stated:

"The jury are the triers of the facts and the sole and exclusive judges of the evidence and the credibility of the witnesses, and, where there is evidence tending to support the findings of the jury, same will not be disturbed on appeal."

From our examination of the record it is our conclusion that there was competent evidence tending to support the verdict of the jury.

Defendants contend the trial court erred in denying admission of certain testimony. This was the testimony of Jones' bookkeeper relative to the difficulty and ad-

ditional expense to Jones in making special forms in which to run concrete and allegedly caused by plaintiffs' pumping dirt, sand and water from the elevator boot pit. The trial court was of the opinion that this required engineering proof. This item of claimed expense amounted to $215.15 and was only one of the many disputed items of expenses relied upon by Jones in his cross-petition. From our examination of the record it would appear uncertain as to whether the court intended to sustain the objection only as to the bookkeeper's expression of opinion that plaintiffs were careless and made the boot pit too large or intended to include also the expense he had set down in his records. However the witness had previously testified to a figure of $666.54 which included the above smaller figure. From our examination of the record and in view of the verdict we believe defendants were not prejudiced. In Oklahoma City v. Stewart, 76 Okl. 211, 184 P. 779, we said:

"This court will not reverse a case for the reason the trial court admitted incompetent evidence, or rejected competent evidence, unless it appears that the same has prejudiced the rights of the parties thereto."

Defendants further complain of the refusal of the trial court to give certain requested instructions.

In this connection defendants contend Jones' requested instruction No. 1 regarding the measure of recovery, in the event the jury found for Jones, was erroneously refused, and that no similar instruction was given to the jury. The requested instruction, in brief, instructed that Jones should be allowed recovery of the reasonable and proper cost of completion of plaintiffs' contract obligations and to be deducted from the amount due plaintiffs for full completion of the contract, but if the cost of completion to Jones exceeded the contract price then render a verdict for Jones for such excess. We believe that the trial court substantially incor-

porated the requested instruction in its instructions 10 and 14.

Defendants also complain of rejection of Jones' requested instructions Nos. 2 and 3. These requested instructions were in substance that it was no excuse for breach of the contract "in this instance," that unforeseen difficulties had been encountered, or that a windstorm had damaged a portion of the performance, and that such difficulties and windstorm would not relieve the contracting party (plaintiffs) from the contract obligations, nor entitle them to additional compensation. Without comment or discussion as to the correctness or applicability of such instructions to the contract or the acts of the parties under the same according to their respective interpretations, we think the trial court's instruction No. 7 advised the jury as to the obligations of plaintiffs. In such instruction the court instructed as to certain provisions of the contract and that plaintiffs were required, after the windstorm and upon delivery of acceptable machinery, to complete the contract unless prevented by defendants.

In Bedwell v. Williams, Okl., 330 P.2d 359, we held:

"It is only where errors complained of have resulted in a miscarriage of justice, or constitute a substantial violation of some constitutional or statutory right, that this court will reverse a cause, because of the admission or rejection of evidence, the giving or refusing of instructions, or alleged errors in matters of pleading or procedure."

Defendants also urge error by the trial court in giving instructions Nos. 9 and 13. These instructions deal with the measure of any damages allowable to plaintiffs in the event the jury found the issues in their favor. Defendants objected to these instructions but did not submit any instruction as to what they considered a correct measure of damages. In Carver v. Knutson Elevators, Okl., 285 P.2d 391, we held that when an instruction as to the

correct measure of damages is objected to, the party objecting should submit to the court a requested instruction properly submitting the correct measure of damages, and failure to do so constitutes a waiver of the objection to the instruction given.

It is our conclusion that the judgment rendered on the verdict should be affirmed.