No. 19,606.

Quaker Hill, Inc. *v.* E. D. Parr, et al.

(364 P. [2d] 1056)

Decided September 25, 1961.

Messrs. Sheldon and Nordmark, for plaintiff in error.

Mr. J. Fred Schneider, Mr. Ronald Lee Cooke, Mr. Warren O. Martin, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE plaintiff in error, to which we will refer as Quaker Hill or plaintiff, was plaintiff in the trial court in an action to recover the sum of $14,503.56 from defendants, defendants in error here. Judgment was in favor of the defendants, and Quaker Hill seeks review.

In May 1958 the plaintiff, a New York corporation with offices in Newark, New York, sold a large quantity of nursery stock to the Denver Memorial Nursery, Inc. A sales contract, together with a promissory note, was executed on May 19, 1958, and the Denver Memorial Nursery, Inc., was named as the contracting party in the sales contract and as the maker of the promissory note. The form of the signature on the note was as follows:

"Denver Memorial Nursery, Inc.

E. D. Parr, Pres.

James P. Presba, Sc'y.-Treas."

The contract shows the Denver Memorial Nursery, Inc., as purchaser and is signed:

"E. D. Parr, Pres."

From the evidence it appears that in the year 1958, prior to this transaction, Parr, Presba and others formed a corporation having the name "Denver Memorial Gardens, Inc." Its purpose was to operate a cemetery. In May of 1958 Parr and Presba, while in the course of negotiations with plaintiff to purchase nursery stock, undertook to organize a separate corporation called "Denver Memorial Nursery, Inc." On May 14, 1958, an order was signed by Parr on behalf of Denver Memorial Nursery, Inc., which, to the knowledge of plaintiff, was not yet formed, that fact being noted in the contract. Subsequently another order dated May 16, 1958, together with the mentioned note, was executed and was delivered to the plaintiff, together with a down payment in the amount of $1,000. Under the contract the balance of the purchase price was not due until the end of the year. The nursery stock was shipped immediately and

arrived on May 26, 1958. It was temporarily planted with the assistance of plaintiff. After this temporary planting had occurred, a substitute order was sent to Quaker Hill which was similar in all respects to the previous order except that it contained the name "Mountain View Nurseries" instead of "Denver Memorial Nursery, Inc.," as the purchaser. During the course of the ensuing winter and spring and prior to the due date of the balance of the purchase price, the nursery stock all died. The contract contained a guarantee providing for replacement of stock which died.

The Denver Memorial Nursery, Inc., was never formed. Because of name confusion, this corporation was called Mountain View Nurseries, Inc. Its articles were executed on May 27, 1958, and were subsequently filed with the Secretary of State. Neither the Denver Memorial Nursery, Inc., nor the Mountain View Nurseries, Inc., ever functioned as going concerns.

The explanation given at the trial for failure to form the corporation prior to entering into the first contract stemmed from insistence of Quaker Hill that the deal be consummated at once because the growing season was rapidly passing. Barker, who was salesman for Quaker Hill at the time of the sale, testified that the transaction was consummated in this form as a result of his insistence.

After Mountain View Nurseries, Inc., was formed, a new note and contract, prepared by the Division Manager of plaintiff and containing the name "Mountain View Nurseries, Inc.," as contracting party, was submitted to defendants, signed in the name of Mountain View Nurseries, Inc., and returned to plaintiff. The plaintiff company thereafter used the designation "Mountain View Nurseries" in its communications. The present action seeks to subject defendants to *personal* liability in view of the defunct financial condition of the corporation, based upon the fact that the corporation was not formed at the time the contract was made and on the further

ground that the defendants as promoters were individually liable.

In denying plaintiff's claim, the trial court first entered very brief findings, but at the request of plaintiff amended the original findings, the terms of which are hereinafter set forth:

"The Court finds that on or about May 15 through May 19, 1958, the defendants did not represent themselves to be agents of a corporation by the name of 'Denver Memorial Nurseries, Inc.' as suggested in Paragraph 2(a) of the motion but, on the contrary, the defendants, at the suggestion of representatives of the plaintiff agreed to go along with the plaintiff's idea that the name 'Denver Memorial Nurseries, Inc.' be used for the purpose of consummating the order by which certain nursery stock was to be sent to the Denver Memorial Gardens.

"The Court finds that on or about May 15 through May 19, 1958, there was no corporation by the name of 'Denver Memorial Nurseries, Inc.' which fact was well known to the plaintiff and its representatives.

"The Court finds that on or about May 15 through May 19, 1958, the defendants were not promoters of a corporation called 'Denver Memorial Nurseries, Inc.' but yielded to the suggestion of the plaintiff that the name of 'Denver Memorial Nurseries, Inc.' be used for the purpose of consummating the order above referred to.

"The Court finds that a corporation known as 'Denver Memorial Nurseries, Inc.' was never formed.

"It is admitted by the defendant, Parr, through his counsel and the Court finds that the defendant, Parr, signed the document marked Exhibit 2, and that following his name appears the word 'president.'

\* \* \*

"This question also calls for a conclusion rather than a finding. However, in this respect we find and conclude that the plaintiff intended to contract with a non-existent corporation and well knew that there was no

such corporation as 'Denver Memorial Nurseries, Inc.' at the time of said contract."

In summary, the facts disclose that Quaker Hill, a New York corporation acting through a local agent, made a sale to a corporation to be formed, and later accepted still another corporation after formation of the latter. The contract imposed no obligation on defendants to form the corporation nor did it name them as obligors on the note or as promisees in the contract. The question is whether under these circumstances personal liability can be imposed.

In urging that the trial court erred and that the cause should be reversed, plaintiff argues:

1. That promoters who enter a contract in the name of a proposed corporation are personally liable in the absence of an agreement that they should not be liable.

2. That the subsequent formation of a corporation and the ratification of the contract does not operate to release the promoters.

3. That the failure of the nursery stock, the subject matter of this contract, is not a defense because the contractual remedy was replacement.

4. That there should be liability on a quantum merit basis.

 The general principle which plaintiff urges as applicable here is that promoters are personally liable on their contracts, though made on behalf of a corporation to be formed. See 13 Am. Jur. 252, Sec. 113, *Corporations*. See also the section notes in the 1961 cumulative supplement. This doctrine has been recognized and applied in Colorado. See *Hersey v. Tully,* 8 Colo. App. 110, 44 Pac. 854; *Colorado Land and Water Company v. Adams,* 5 Colo. App. 190, 37 Pac. 39 (concurring opinion). A well recognized exception to this general rule, however, is that if the contract is made on behalf of the corporation and the other party agrees to look to the corporation and not to the promoters for payment, the promoters incur no personal liability.

50

In the present case, according to the trial court's findings, the plaintiff, acting through its agent, was well aware of the fact that the corporation was not formed and nevertheless urged that the contract be made in the name of the proposed corporation. There is but little evidence indicating intent on the part of the plaintiff to look to the defendants for performance or payment. The single fact supporting plaintiff's theory is the obtaining of an individual balance sheet. On the contrary, the entire transaction contemplated the corporation as the contracting party. Personal liability does not arise under such circumstances. See 41 A.L.R. (2d) 477, where the annotation recognizes the noted exception that personal liability does not attach where the contracting party is shown to be looking solely to the corporation for payment and not to the promoters or officers. The early Supreme Court decision in *Case Mfg. Co. v. Soxman,* 138 U.S. 431, illustrates the operation of this exception to the general rule. There, as in the present case, an order was signed in the name of a non-existent corporation, the formation of which was contemplated by the parties. Subsequently the corporation was formed. The contention of the individual defendant was similar to that of the defendants here, namely, that the promisee accepted the notes of the corporation to be formed thus manifesting intention to look to that source for its payment. In holding that the question was one of intention of the parties and that the trial court's findings were binding, the Supreme Court declared:

"The second and third assignments of error may be considered together. They present the proposition that the court erred in finding that the notes of the limited liability company of October 20, 1884, were accepted as payment and satisfaction of the original liability under the contract. Here we face the proposition that we are not triers of fact. And if there were evidence upon which such a finding might properly rest, we should ac-

cept the finding as conclusive, and inquire no further into the testimony than we should into its sufficiency to sustain the verdict of a jury."

In the case at bar, the findings of the trial court clearly establish intent on the part of the plaintiff to contract with the corporation and not with the individual defendants.

The curious form of this transaction is undoubtedly explainable on the basis of the long distance dealing, the great rush to complete it, the heavy emphasis on completion of the sale rather than on securing payment or a means of payment. No effort was made to expressly obligate the defendants and this present effort must be regarded as pure afterthought.

Being convinced that the trial court's determination was proper under the circumstances, we conclude that the judgment should be and it is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.