[No. 98-40450-1. Division One. February 24, 1970.]
Panel 1

AMERICAN AVIATION, INC., et al., *Appellants*, v. DAVID HINDS et al., *Respondents*.

DAVID HINDS et al., *Respondents*, v. AMERICAN AVIATION, INC., et al., *Appellants*.

*Murray, Dunham & Waitt* and *Robert K. Waitt*, for appellants.

*Wolf, Cafferty & Wilkins* and *Martin L. Wolf*, for respondents.

FARRIS, J.—David and Alma Hinds, husband and wife, operated H & H Flying Service, a California corporation. They offered a Cessna 172 airplane for sale for $8,000. American Aviation, Inc. (formerly Northern Aircraft Sales, Inc.) and Clifford Sylvia, its president, were in the aircraft sales business in King County, Washington. In December, 1966, Mr. Sylvia offered to trade 320 shares of stock of Life Insurance Agencies of America, Inc. for the Cessna 172 airplane.

Possession of the Cessna 172 was transferred from Hinds to Northern Aircraft Sales, Inc. Each party sued the other; Hinds for return of the Cessna, together with $200 for

rental of said aircraft, and Northern Aircraft Sales, Inc. seeking to vest title to the Cessna in Northern Aircraft Sales, Inc. or in the alternative, for damages in the sum of $8,000. The two actions were consolidated for trial. Northern Aircraft appeals from the judgment awarding the Cessna aircraft to Hinds with the sum of $200 for rental.

The value of the stock, proposed by Sylvia for purpose of the trade, was $25 per share. At that time, the stock had a book value of 77 cents per share and a cost-market of $1 or less per share. The record supports the trial court's conclusion that Hinds did not rely upon the representations of value made by the appellant. There was therefore no fraud in the transaction. The record reflects that there was an offer for agreed-upon consideration. The only question is whether the offer was accepted.

A pilot for appellant delivered 320 shares of Life Insurance Agencies of America stock to Hinds' place of business where they were left with an employee who permitted the pilot to fly the aircraft to Seattle. The record indicates that the following transpired at the time of the exchange on or about January 8, 1967:

I waited until about 3:00, when I called Mr. Sylvia and told him that Mrs. Hinds hadn't showed, and he said, "Well, make up your own mind." I was out of clothes. I had only taken one shirt and this was the third day on the trip. He said, "Make up your mind. You can wait for Alma and stay over night or take an airliner and come on home. Do what you want to, just make up your own mind." So I spent a few more minutes and talked to Mrs. Hinds' instructor there, chief pilot I think he was at that time, and he said, "Well, why don't you take the plane and go on to Seattle?" It was getting dark and the weather was quite bad and the plane is not instrument equipped. And I waited until the last moment, about 4:00, I think. It was starting to darken and I said, "Well, I'll go ahead." So he gave me the log books, the keys. And I said, "I wonder how I should make this out, to Mrs. Hinds or to the company?" And I don't think he was familiar with the transaction because he seemed undecided, and I said, "Well, I'll put the name of the company in since you can't give me the title, the bill of sale, until Alma comes

anyway. She can send it. They can make arrangements." I took the keys, checked the weather, and filed a flight plan and brought the plane to Seattle.

Hinds did not return the stock nor did he immediately demand that possession of the aircraft be returned to him but he did condition his acceptance of the transaction upon his verifying that the stock had a value of or could be sold for $25 per share. After completing his investigation of value which included a conference in Olympia with Bernard G. Lonctot, state securities administrator, and a telephone conversation with Stuart H. Peckham, president of Life Insurance Agencies of America, Inc. Hinds discussed a second transaction with appellant without revealing his conclusions from his investigation. The appellant asserts that Hinds accepted the offer by this conduct.

██ Acceptance may be implied from conduct as well as words. *DeBritz v. Sylvia,* 21 Wn.2d 317, 150 P.2d 978 (1944). We agree with appellant that Hinds had a number of opportunities to advise him that there was no agreement but failure to speak or to reject an agreement is in fact acceptance or ratification *only* when there is a duty to speak. See *Jones v. Brisbin,* 41 Wn.2d 167, 247 P.2d 891 (1952); Restatement of Contracts § 72 (1932).

Possession of the aircraft and the stock were exchanged on or around January 8, 1967. Hinds advised appellant of his refusal to accept the stock in exchange for the aircraft on or before January 17, 1967. The title to the Cessna was never delivered to the appellant although frequently requested by him.

Upon conflicting evidence the trial court found:

The defendant, Hinds, at no time accepted the stock in exchange or in payment for the Cessna 172. There was no contract ever entered into between the parties for a trade of stock owned by the plaintiff, Sylvia, or his corporation to the defendants for the Cessna 172 owned by the defendants and the defendants are still the owners and entitled to the possession of that certain Cessna 172 registration N-5352T, serial number 172512-52.

Finding of Fact 8.

■ There is substantial evidence in the record to support this finding. We will not overturn a finding of fact if there is substantial evidence in the record to support it. *Kuster v. Gould Nat'l Batteries*, 71 Wn.2d 474, 429 P.2d 220 (1967) and numerous Washington decisions.

Hinds testified that the parties agreed to a rental of the aircraft. This allegation was not denied. The undisputed evidence is that the Cessna 172 was in possession of the appellant for some 25 hours of flying time and a reasonable rental value to be assessed for such time was $8 per hour.

Finally, appellant assigns error to the admission of testimony regarding conversations that Hinds had in Olympia and records that he observed while there. This evidence was timely objected to by the appellant.

The records in Olympia were inquired into first by the appellant. The continuation of the testimony was properly allowed to place the entire record before the court. See *Nellis v. Allen*, 268 Ala. 259, 105 So. 2d 659 (1958); 7 J. Wigmore, Evidence § 2113 (1940); C. McCormick, Evidence § 56 (1954).

The judgment is affirmed.

JAMES, C. J., and SWANSON, J., concur.