Lloyd G. **TUCKER**, Frances L. Miller and Robert S. Zschach, d/b/a Consolidated Sales Company, Plaintiffs in Error,

v.

**COLORADO INDOOR TRAP SHOOT, INC.,** a Foreign Corporation, Defendant in Error.

No. 42431.

Supreme Court of Oklahoma.

June 23, 1970.

Gable, Gotwals, Hays, Rubin & Fox, and Richard W. Gable, Ellis & Stark, and Victor Law Ellis, Jones & Givens and Jack Givens, Tulsa, for plaintiffs in error.

Rheam & Noss, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This appeal involves a controversy arising out of the contractual relations between two business entities, one of which was Tulsa-based and called "Consolidated Sales Company", referred to herein merely as "Company", and the other of which was Denver-based and called "Colorado Indoor Trap Shoot, Inc.", hereinafter referred to as "Colindoor" or "plaintiff".

At the time Company and Colindoor contracted with each other, the Bloomer Company, a Chicago manufacturer of equipment for a certain type of indoor trap shoot establishment, had agreed to furnish such equipment for Company to sell under exclusive franchises in parts of the United States.

The transaction between Company and Colindoor involved in this action revolves around two written contracts dated August 30 and September 1, 1962, respectively, one of which, entitled "CONDITIONAL SALES CONTRACT", is hereinafter referred to as "P–1" (plaintiff's Exhibit 1), and the other, entitled "SALES AGREEMENT", is hereinafter referred to as "P–2" (plaintiff's Exhibit 2).

Under P–1, Colindoor was to purchase from Company the necessary equipment to open and operate one of the indoor trap shoot establishments in Colorado. Under P–2, in consideration for Colindoor's entering into P–1, and its payment to Company of $2,100.00 (which was referred to as "earnest money"), Company agreed to sell Colindoor the exclusive right to sell, lease, and distribute all such indoor trap shoot equipment in the State of Colorado for a maximum period of 5 years, under

certain conditions, some of which will be hereinafter more particularly described.

The equipment which Colindoor agreed, in P–1, to purchase from Company for a total price of $27,500.00, included 6 Multi-Throw Automatic Trap Units. Of this sum, only $2,500.00 was required to be paid when these 6 units were ordered. By way of facilitating the financing of the remaining $25,000.00 of the equipment's purchase price, Colindoor, in one of P–1's provisions, agreed to furnish the necessary credit information, and file with "CIT CORPORATION", or a lending institution of its own choice, the necessary applications and forms for "PROCESSING OF THE REQUIRED FINANCED BALANCE * * * "; and, in the next paragraph of said contract, it was provided that the equipment would be shipped to Colindoor at Boulder, Colorado, "UPON APPROVAL OF THIS SALES CONTRACT AND * * * (Colindoor's) CREDIT BY MULTI-THROW SALES COMPANY OF TULSA, THE SELECTED FINANCE INSTITUTION AND * * * (Company) * * * ". In the next consecutive paragraph of P–1, the parties to said contract declared it to be their understanding that Company would return the above mentioned $2,500.00 "DEPOSIT PAYMENT" to Colindoor should Colindoor "BE UNABLE TO OBTAIN NECESSARY FINANCING CREDIT, EITHER THROUGH * * * (Colindoor's) OWN EFFORTS OR THOSE OF MULTI-THROW SALES COMPANY AND/OR ITS AFFILIATES."

By the terms of P–2, Colindoor agreed to purchase, on or before February 1, 1963, 18 more Multi-Throw Automatic Trap Units, than the 6 covered by P–1 (together with accessory equipment like that described in said Conditional Sales Contract), but, in one of said contract's paragraphs, it was also provided that, if Colindoor failed to make such purchase by that date, the entire agreement became null and void, and the aforementioned $2,100.00 (prescribed by said contract to be paid Company by Colindoor) "shall be returned * * * on or before March 15, 1963."

Both the above mentioned $2,100.00 "earnest money" payment and the $2,500.-00 "deposit payment" were made to Company by checks dated August 22 and September 1, 1962, respectively, drawn by one Dean M. Somers and Verna I. Somers, his wife, on a Denver bank.

Thereafter, Colindoor did not find an appropriate location for an indoor trap shoot establishment in Colorado, and Company did not ship the equipment described in P–1 to Boulder, as prescribed in said contract, or issue to Colindoor the exclusive Colorado franchise contemplated in P–2.

A few years later, Colindoor instituted this action, as plaintiff, naming plaintiffs in error "D/B/A" Company, as defendants, to recover the $4,600.00 paid to Company, as aforesaid, together with interest from March 15, 1963, and costs. In its petition, said plaintiff alleged that it had caused the payments of $2,100.00 and $2,500.00 to be paid Company and that thereafter, in October, 1962, the defendant, Tucker, had been informed that plaintiff could not obtain the financing referred to in the above described contract provisions, and that defendants had not offered to obtain financing credit for plaintiiff. Plaintiff further alleged, among other things in substance, that under the (above mentioned) terms of the two contracts it had with defendants, said contracts were now null and void, and plaintiff was entitled to the return of the $4,600.00; that plaintiff had made demand upon defendants for it, but that said demand had been refused.

The defendants (Tucker, Miller and Zschach) filed separate answers and/or amended answers, as individuals. In all of these answers, the execution of the two contracts was admitted, but defendants denied, in substance, that any of them signed same as individuals, or intended to incur any personal liability by reason

thereof. They alleged that, instead, the contracts were entered into on behalf of Company, which was to be formed by defendants as promoters of such corporation. It was further alleged that, at the time of the execution of the two contracts, the parties that purported to act on behalf of Colindoor were likewise contracting and acting as promoters of a proposed corporation; that none of the parties executing said contracts intended to bind themselves personally, but only as promoters of their respective corporations; and that this was known to all of them. Defendants denied that plaintiff was unable to obtain the necessary financing to fulfill its contract agreements, and alleged that the defendant, Zschach, both for himself and on behalf of Company, offered to furnish the necessary financing. Defendants further alleged, in substance, that plaintiff's failure to purchase the equipment prescribed in the contracts constituted a breach thereof and relieved the defendants from any obligation to further perform thereunder.

Before the trial, both plaintiff and defendants answered interrogatories issued by the other, and, at the trial before a jury, the defendant, Zschach, was interrogated on cross-examination concerning some of the answers he had given to such interrogatories. When the hereinbefore described contracts were introduced in evidence by plaintiff, showing that the one referred to as P–1 was signed in the name of Colindoor, "By: Dean M. Somers, Pres.", and the one referred to as P–2 was drawn for execution of both Colindoor and Company, as corporations, and it was further shown by plaintiff's evidence that, on the dates of these contracts, neither of the firms, in whose names the contracts were executed, had yet been incorporated, defendants demurred to plaintiff's evidence on the ground that both of said contracts were entered into as corporation contracts, and consequently defendants were not liable individually for any obligation that their execution purported to create. The court overruled this demurrer, defendants were allowed exceptions, and thereafter they introduced their own evidence, which included testimony from each of them. One of them, the defendant, Zschach, testified, on direct examination, that Company was not incorporated until October 22, 1962; that he is president of said corporation, and has approximately "a hundred and thirty thousand dollars" invested in it. The witness denied that the business was operated as a partnership, before the incorporation. He further testified that the 6 Multi-Throw Automatic Trap Units, which Colindoor agreed to purchase under P–1, supra, were ordered from Bloomer Manufacturing, and were thereafter delivered to Tulsa, where they were left with Bekins Transfer Company. Mr. Zschach further testified that Company paid Bloomer $7,200.00 for them. Thereafter, plaintiff's counsel began his interrogation of the witness on cross-examination, with questions concerning a Tulsa building, which was referred to as the location of "the old trap shoot operation * * *"; then the cross-examination continued as follows:

"Q Do you know where these six units that were used there are now located?

A Yes, sir.

Q Where are they?

A In Broken Arrow.

Q Where, in Broken Arrow?

A In the Ready Mixed Concrete Plant storage room.

Q You have an interest in several businesses, do you not?

A Yes, sir.

Q And you have some interest in a business of this type, do you not?

MR. GABLE: Your Honor, I will object, that question has nothing to do with the issues in this case.

THE COURT: Overruled.

Q You may answer.

A Yes, I own the Tulsa Ready Mixed Concrete Company.

Q Do you own any other companies?

A Yes, sir.

Q Is Tulsa Ready Mixed Concrete a corporation?

A Yes, sir.

Q What is the name of another company you own?

MR. GABLE: I am going to object to the form of that question.

THE COURT: I am going to give you a continuing objection, I believe a sufficient predicate has been laid to justify the point in question.

Q You may answer.

A Well, I have several corporations, would you like to have all of them?

\* \* \* \* \* \*

Q Well, you have control of several?

A I am president of several corporations, yes.

Q You also, about the time these contracts were signed, in October of 1962, did you also have a business interest similar to this one?

A Yes.

Q You have not denied this is your signature?

A No, those are my signatures.

Q You do not deny those are your signatures on the contracts?

A No.

Q Are you familiar with the, —were you familiar with the form, the contract forms that were used by Consolidated Sales Company for use by franchise operators around the country? You stated there were others, there was a form of contract, was there not?

A Yes, there was, but I am not familiar with it.

Q Have you ever seen it before?

A I don't think I have.

Q Do you know whether or not a copy of that was furnished to the plaintiff in this case?

A No.

Q Do you remember answering some written, —these written interrogatories?

A Frankly, I don't remember but I am sure I did.

Q You signed them and acknowledged, under oath, on the 22nd day of September, 1965. My first question was: 'Are you now or have you ever been a partner in a partnership known as Consolidated Sales Company,' and your answer was, 'yes'.

MR. ELLIS: I will object to that question on the grounds it calls for a legal conclusion on the part of this witness.

THE COURT: The objection will be overruled.

Q Did you answer that question?

A Evidently I did.

Q And sub-paragraph 2(e). Paragraph No. 2. was: 'If Consolidated Sales Company was ever a partnership, state', and sub-paragraph (e) was: 'Your position with such partnership'. Do you recall answering that?

MR. ELLIS: I am going to object on the same grounds, it is calling for a legal conclusion.

THE COURT: I believe the instructions will instruct as to the law and the jury is admonished that any understandings of the witnesses are not necessarily the law, we are interested in what is in the minds of the parties in this case, and any of their opinions are not binding as to legal definitions. Go ahead.

Q Do you recall answering that question?

A I think I answered it, probably, 'yes'.

Q The next question was: 'The position and office in such partnership which was held by Frances L. Miller', do you remember answering that question?

A I told you I have forgotten all of the questions, if you read the answers I

will say, yes, —or no, I am not denying anything that I said on there.

Q And, 'The position and office in said partnership held by Lloyd G. Tucker', do you deny that you answered that part of it?

A No.

\* \* \* "

At the close of the evidence, the court gave the jury various instructions, some of which were objected to by defendants, as will hereinafter more fully appear. The court also gave the jury the following directions, and, after the jury's deliberations, obtained from it, together with a verdict for plaintiff in the sum of $4,600.00, the answers shown below the following questions:

"You are directed to find as matter of fact whether the following statements are true or false:

1. The persons who negotiated and signed the contracts designated as Plaintiff's Exhibit 1 and 2, intended that such contracts be binding only on the two Corporations then being formed, and was not to be the personal responsibility of any of the individuals in such transaction.

ANSWER: TRUE_____ FALSE_ ✕ _

If your answer to the first interrogatory is true, do not answer the following questions. If your answer to question No. 1 is False, answer the following questions:

2. Is Plaintiff entitled to a return of $2,100.00 under the terms of Paragraph 2 of the Sales Agreement, Exhibit No. 2.

ANSWER: YES_ ✕ _NO_____

3. Did the Defendant attempt to obtain the necessary financing in accordance with the requirements of the Conditional Sales Contract, Exhibit No. 1.

ANSWER: YES_ ✕ _NO_____

A judgment was thereafter entered for plaintiff that included the principal sum

it had sought. Thereafter, defendants filed a motion for new trial, and, after it had been overruled, lodged the present appeal on the original record.

Under their Proposition V for reversal of the trial court's judgment, defendants take the position that plaintiff's evidence did not support its recovery, because it showed no effort to obtain financing for the purchase of the trap shoot equipment, as distinguished from any larger sum that may have been needed for building construction or general business investment.

Under their Proposition III, defendants take the position that plaintiff was not entitled to recovery, for the further reason that, since it had not yet been incorporated at the time the contracts, P–1 and P–2, supra, were executed in its name by Dean M. Somers, as its president, and since plaintiff's evidence included no assignment from Somers and the other promoters of the plaintiff corporation, Baker and Ashline, it can be assumed that there was no such assignment, and, if there was none, the jury should have concluded that the two contracts were intended to have been between two corporations, and that therefore they created no contractual personal liability.

 We find no predicate for defendants' present challenge of the jury's findings on the issues referred to, because the record reveals no challenge by them to the sufficiency of the evidence as a whole after they had introduced their own evidence. In Bolon v. Smith, 170 Okl. 407, 40 P.2d 677, it was held:

"If a defendant, after its demurrer to the evidence of the plaintiff has been overruled, does not stand upon the demurrer but puts in its evidence, it waives the demurrer, and if it does not move for a directed verdict after the parties have finally rested, it cannot urge against an adverse verdict that the evidence was insufficient to establish a cause of action in favor of the plaintiff.

[Marland Refining Co. v. Harrel, 167 Okl. 548, 31 P.2d 121.]"

See also Richardson v. Shaw, Okl., 313 P.2d 520, and other cases cited therein. As, under the well-established rules above referred to, neither the trial court's alleged error in overruling defendants' demurrer to plaintiff's evidence, nor the sufficiency of the evidence as a whole to support the jury's verdict, is before us, it will be presumed, in accord with the presumptions accompanying trial court verdicts and judgments to this court, that there was introduced at the trial competent evidence reasonably tending to support the jury's determination that the defendants were personally liable for the return to plaintiff of the $4,600.00 which the evidence showed was paid Company, on plaintiff's behalf, by Mr. and Mrs. Somers' two checks. Accordingly, defendants' arguments under their Propositions III and V present no cause for reversal of the trial court's judgment.

■■■ Under defendants' Proposition II, they recognize the general rule that the promoters of a corporation, yet unformed, are personally liable on contracts made in such a corporation's name; but they contend that the present case is within the exception to said rule, as referred to and applied in Quaker Hill, Inc. v. Parr, 148 Colo. 45, 364 P.2d 1056, because the evidence shows that plaintiff accepted P–1 and P–2, supra, as corporate contracts of Company. Plaintiff disputes defendants' claim as to what the evidence shows. It says the question is whether or not it knew, at the time P–1 and P–2 were entered into, that the defendants intended to form a corporation, after the contracts were signed, and whether or not it (plaintiff) intended to look only to that corporation for performance. Plaintiff's brief sets forth citations of the record, which it says shows that it, through its officers and agents, " * * * was unaware that defendants were going to form a corporation but was informed by defendants and believed * * *" that Company was then a partnership.

As shown by the hereinbefore quoted excerpt from the trial court's judgment, the jury's answer to the first interrogatory submitted to its supports plaintiff's contention concerning this issue in a very specific and unequivocal manner. Under the rules above cited, that answer must remain final and conclusive.

Under their Propositions IV and VI, defendants complain of plaintiff counsel's hereinbefore quoted cross-examination of the defendant, Zschach. Under Proposition IV, they say, in substance, that by eliciting from that witness the fact that he is the president of, and has interests in, other corporations, besides Company, said counsel let the jury know that this defendant (at least) could afford to stand the loss of the money plaintiff sought from defendants better than the president of Colindoor, who was shown to be a barber. Plaintiff, on the other hand, contends that such testimony was admitted (1) as showing that because of Zschach's experience in working with other corporations he was, or should have been, aware of the wording and phraseology used in contracts referring to corporations, as distinguished from those made by individuals doing business as a company, and (2) to overcome the prejudice created in the minds of the jury by defendants' elicitation from the said witness that he had invested approximately $130,000.00 in Company, and that Company had invested $7,200.00 in the 6 Multi-Throw Automatic Trap Units.

Under their Proposition I, defendants also complain that, in the trial judge's instructions to the jury, he incorrectly characterized defendants' answers as general denials, when in truth and in fact defendants, in those pleadings, admitted the execution of the contracts (P–1 and P–2) and also the payment of the $4,600.00 which plaintiff sought to recover.

It is well settled in this jurisdiction that a judgment will not be disturbed because of alleged erroneous instructions, unless it appears reasonably certain that the jury was misled thereby, to the prejudice of the complaining party. See Commonwealth Life Insurance Co. v. Gay, Okl., 365 P.2d 149. As the court's statement to the jury, here complained of, was so obviously an incorrect and mistaken one, in view of the plain wording of defendants' answers and the undisputed testimony heard by the jury, it is difficult for us to believe that the jury did not perceive this. As said in Hatcher v. Morris, Okl., 441 P.2d 462, we have had previous occasion to recognize jurys' perceptive powers, and, under the circumstances, we cannot say, with reasonable certainty, that the jury was misled by the court's obvious mistake, or that the verdict would probably have been different had this error not occurred. We therefore find no cause for reversal, either in the court's description of the defendants' answers, or in plaintiff counsel's cross-examination of Mr. Zschach. Under the harmless error rule in effect in this jurisdiction:

"It is only where errors complained of have resulted in a miscarriage of justice, or constitute a substantial violation of some constitutional or statutory right, that this court will reverse a cause, because of the admission or rejection of evidence, the giving or refusing of instructions, or alleged errors in matters of pleading or procedure." Jones v. Parker, Okl., 380 P.2d 73; Bedwell v. Williams, Okl., 330 P.2d 359.

The alleged errors complained of under defendants' Propositions I, IV and VI do not meet the above described test of reversible error. Therefore, they lack sufficient merit as ground for disturbing the trial court's judgment.

In accord with the foregoing, said judgment is hereby affirmed.

All the Justices concur.