Argued February 6, affirmed as modified August 8, 1974

# SHERWOOD & ROBERTS-OREGON, INC., *Appellant and cross-respondent, v.* ALEXANDER ET AL, *Respondents and cross-appellants.*

525 P2d 135

*Lon N. Bryant,* Portland, argued the cause and filed briefs for appellant and cross-respondent.

*Carlton W. Hodges,* Portland, argued the cause for respondents and cross-appellants. With him on the brief were Bernard, Hurley, Hodges & Kneeland, Portland.

DENECKE, J.

The issue is whether the individual defendants are personally liable on a note executed by "Iron Mountain Investment Co., Inc. By David Alexander [one of the defendants]." The trial court, sitting without a jury, held the defendants were not liable and the plaintiff appeals.

The defendants are real estate developers. They held title to some land either as individuals or in an unincorporated joint venture known as Iron Mountain Investment Company. Defendants planned to develop this land. The plaintiff is in the business of lending money and securing loans from other sources for plaintiff's customers. Defendants sought financing through plaintiff who suggested securing a commitment for a long-term loan; that is, an offer by a lender to make defendants a loan, the offer to continue for an agreed period of time.

■ Under existing financial conditions the interest on the loan would be at least 12 per cent. Twelve per cent is a usurious rate to charge individuals; therefore, plaintiff informed defendants that any loan would have to be made to a corporation. Corporations are not subject to the same usury law as individuals.

As a prerequisite to seeking a loan commitment for defendants, plaintiff required a "good faith deposit" from defendants. One of plaintiff's officers explained the purpose of a good faith deposit as being "To assure us that our work, time and expense involved isn't in vain. We won't get paid." The amount of the deposit is one per cent of the proposed loan. If the plaintiff cannot secure a commitment the deposit is refundable. If the commitment is secured and the bor-

rower accepts the commitment, plaintiff applies the deposit to the fee plaintiff charges for securing the commitment. If the plaintiff secures a commitment but the borrower will not accept the commitment, plaintiff retains the deposit.

When plaintiff was preparing the note which was to be the good faith deposit, plaintiff asked defendant Alexander what corporation would borrow the money and execute the good faith deposit note. Alexander did not have any corporation, but told plaintiff the corporation's name would be "Iron Mountain Investment Co., Inc." The note was so prepared and signed by Alexander for the corporation. Plaintiff knew that at this time there was no corporate entity.

Plaintiff secured a commitment; however, it was not acceptable to defendants. The parties disagreed whether the commitment complied with their previous understanding. Because the commitment was rejected, plaintiff brought this action on the good faith deposit note. Defendants never attempted to form a corporation.

Plaintiff is attempting to recover on the basis of ORS 57.793, which provides:

> "All persons who assume to act as a corporation without the authority of a certificate of incorporation issued by the Corporation Commissioner, shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

We interpreted this section in *Timberline Equipment Company, Inc. v. Davenport*, 267 Or 64, 514 P2d 1109 (1973). Contrary to plaintiff's contention in this case, we held in *Timberline* that this section was ambiguous. We also held that ORS 57.793 must be con-

strued together with ORS 56.321. These two sections, in essence, provide that the corporate entity conclusively begins with the issuance of the certificate of incorporation. Any steps to incorporate, short of the securing of the issuance of the certificate, are ineffective; those assuming to act for a defectively incorporated corporation are personally liable.

The *Timberline* decision and those two sections, however, do not necessarily lead to a decision that the defendants in this case are liable.

■ In *Timberline* we quoted the commentary to § 146 of the Model Act which is similar to ORS 57.793. The commentary is to the effect that the purpose of this section was to end the doctrine of de facto corporations. That doctrine, of de facto corporations, is that although a corporation has not complied with all the requirements for incorporation, its existence as a legal entity cannot be attacked if it has colorably fulfilled these requirements. As the commentary points out, this was a "fuzzy" doctrine and no longer necessary because legal incorporation is now relatively simple.

The problem presented by this case is not to pinpoint when, in the course of an attempt to incorporate, the organization attains an unassailable legal entity. All parties knew there was no legal entity "Iron Mountain Investment Co., Inc." in any stage of incorporation. Under the common law the doctrine of de facto corporations would not have governed this case. Another well recognized common-law rule would have applied. We must examine this other common-law rule to determine whether it has been supplanted by statute.

■ Since all parties were fully informed of the purely

prospective existence of the corporation, the note is best termed a preincorporation contract. Parties in the position of the defendants are termed "promoters." "Promoters" are defined:

> "* * * 'In a comprehensive sense "promoter" includes those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business. * * *.' " 1 Hornstein, Corporation Law and Practice, 92, § 91 (1959).

Preincorporation agreements are common transactions:

> "It is frequently desirable as a practical matter to obtain options, enter into contracts for the purchase of land, buildings, machinery and materials, and for the performance of services prior to the incorporation of the business unit for whose benefit such transactions are to be consummated. * * *." Lattin, Corporations (2d ed), 111, § 29.

The common-law rule governing these preincorporation contracts is stated:

> "It is settled by the authorities that a promoter, though he may assume to act on behalf of the projected corporation and not for himself, will be personally liable on his contract unless the other party agreed to look to some other person or fund for payment. * * *." *King Features Synd. v. Courrier,* 241 Iowa 870, 875. 43 NW2d 718, 41 ALR2d 467 (1950).

For additional decisions to this effect see Annotation, 41 ALR2d 477, 500-510 (1955).

Some of the rules of law governing other aspects of preincorporation agreements have been severely criticized. For example, Kessler, *Promoters' Contracts: A Statutory Solution,* 15 Rutgers L Rev 566 (1961);

Gross, *Pre-incorporation Contracts,* 87 L Q Rev 367 (1971). However, the quoted rule applicable to these facts has not been criticized because it is based upon the basic principle of contracts that the intention of the parties should prevail.

Washington has a statute identical to that relied upon by plaintiff, RCW 23A.44.100. The Washington Court of Appeals was of the opinion that the statute codified the common-law rule governing preincorporation contracts. *Heintze Corp., Inc. v. Northwest Tech-Manuals, Inc.,* 7 Wash App 759, 502 P2d 486 (1972). We have found no intimation of that in all the writings on the Model Business Corporation Act or preincorporation agreements. As we stated, we do not find such an interpretation implicit in the wording of the statute.

■ Because the statute was intended to abolish the common-law doctrine of de facto corporations, because it was not intended to apply to the common-law rules governing preincorporation agreements, and because it does not by its terms unambiguously apply to a promoter's liability for preincorporation agreements, we hold the statute is not applicable and the common-law rule governing the liability of promotors for preincorporation agreements applies.

The next step is to determine if there was any evidence that the plaintiff agreed to accept the obligation of a to-be-formed corporation solely and not to look for payment from the defendants as individuals. The trial court made a finding of fact:

> "Defendants did not at any time assume to act as a corporation but simply agreed to subsequently organize a corporation. Plaintiff made no attempt verbally or in writing to hold defendants individually as co-signers or as guarantors."

This finding probably was intended to be to the effect that the plaintiff was not looking to the individuals for payment of the note.

■ We find there was evidence that plaintiff looked solely to the to-be-formed corporation for payment of the note. Unlike the creditor in the usual case, the plaintiff in this case is the party that insisted that the contract show a corporation as the obligor and would not do business otherwise, although plaintiff knew when the note was executed that no corporation existed. Plaintiff's officer who handled the transaction testified that plaintiff would look to the defendant individuals as well as to the corporation for payment of the principal note and mortgage, had it been consummated. He testified the defendants and their wives would have been required to execute these documents in their individual capacity. The commitment tendered to defendants had blanks for defendants and their wives to sign, individually, indicating their acceptance. That the note, prepared by plaintiff, was not prepared for the signature of either defendant as an individual, whereas all the other documents were so prepared is also some evidence that plaintiff did not intend to have the defendants, as individuals, obligated on the note.

Further evidence is the testimony of plaintiff's officer that when the note was signed, he did not intend to proceed further in securing a commitment until defendants provided him with their articles of incorporation. The trial court could infer from this testimony that the plaintiff was not going to look to the individual defendants to repay it for the expense of finding a commitment; rather, the plaintiff desired to conduct all parts of this transaction with a corporate entity. This desire on plaintiff's part is reasonable as

plaintiff's officer was concerned that if the corporation was considered a sham to avoid the usury statute, plaintiff would be subject to the penalties of the usury statute.

The defendants have cross-appealed seeking attorney fees in the trial court.

■ The note had a provision for attorney fees to be awarded for collecting the note. ORS 20.096 provides that when there is such a provision, the prevailing party, whether the plaintiff or the defendants, shall be entitled to attorney fees. *Dean Vincent, Inc. v. Chamberlain,* 264 Or 187, 504 P2d 722 (1972), makes the statute applicable to this note.[1]

The parties stipulated "that in the event the Court sees fit to award attorney's fees to either party, it could do so without the necessity of producing evidence." For an unknown reason, the trial court did not award attorney fees to the defendants, the prevailing parties.

■ Plaintiff's contention that the stipulation permitted the trial court to award or withhold attorney fees as a matter of grace is incorrect. Plaintiff's further contention that defendants are not entitled to attorney fees because they failed to claim them in their cost bill is also incorrect. Neither the note nor the

---

[1] The defendants are not parties to the note. The plaintiff, however, does not contend that ORS 20.096 is only applicable to parties to the note. For this reason we do not consider this contention.

ORS 20.096 was patterned after California Civil Code Sec. 1717; Dean Vincent, Inc. v. Chamberlain, 264 Or 187, 193, 504 P2d 722 (1972). A California Court of Appeals held the California statute provided for an award of an attorney's fee to a person who was not a party to the note. We are not, however, persuaded by the reasoning that the Court used in reaching that result.

statute provides that the attorney fees are costs. We have held fees awardable because of a contract provision are not costs. *Kincaid v. Fitzwater,* 257 Or 170, 177, 474 P2d 742, 477 P2d 712 (1970). ORS 20.096 does not treat attorney fees as costs.

■ *Tiano v. Elsensohn,* 268 Or 166, 520 P2d 358 (1974), expressly limited the procedures required for awarding attorney fees to those instances in which "attorney fees are allowed by statute as a part of costs." 520 P2d at 360. When attorney fees are not part of costs they do not have to be included in the cost bill.[2]

The judgment is affirmed except that the cause is remanded to the trial court for an award of attorney fees to defendants.

---

[2] A statute providing one procedure for the award of attorney fees in all types of cases would be helpful.